**AETNA LIFE INSURANCE COMPANY,**
*Appellant,*

v.

**Walter H. ADAMS et ux., Appellees.**

**No. 7082.**

Court of Civil Appeals of Texas.

Beaumont.

Oct. 16, 1969.

Rehearing Denied Nov. 6, 1969.

King, Sharfstein & Rienstra, Beaumont, for appellant.

Monte D. Lawlis, Joe H. Tonahill, Jasper, for appellee.

PARKER, Chief Justice.

This is a suit brought by the appellees, Walter H. Adams and wife, M. G. Adams, upon a group hospitalization insurance policy written by the appellant, Aetna Life Insurance Company, to recover benefits as a result of the confinement of appellees' son, Walter Hagan Adams, Jr., at Beaumont Remedial Clinic, Inc. The basic controversy in the trial court was whether or not there was any evidence that Beaumont Remedial Clinic is a hospital as defined in the policy. That is the only question presented by this appeal. Trial was to a jury, which found, inter alia, that Beaumont Remedial Clinic was a hospital under the policy definition. Appellant's motion to disregard this jury finding and for judgment was overruled by the trial court. Judgment on the verdict was thereafter entered in favor of appllees in the amount of $3,337.60.

Walter Hagan Adams, Jr. was born August 24, 1958. On January 3, 1968, he was admitted to Beaumont Remedial Clinic. The Aetna Life Insurance Company had issued previously a group insurance policy covering the employees of Kirbyville State Bank and their children. The mother of the boy, Mrs. M. G. Adams, the wife of Walter H. Adams, was such an employee and their son was covered by the policy subject to its terms and exclusions of liability. Appellant, Aetna, specifically denied that Beaumont Remedial Clinic was a "hospital" within the policy definition of that term. The policy definition is:

"The term 'hospital' means only an institution which meets fully every one of the following tests, namely, (a) it is primarily engaged in providing—for compensation from its patients and on an inpatient basis—diagnostic and therapeutic facilities for the surgical and medical diagnosis, treatment, and care of injured and sick persons by or under the supervision of a staff of physicians, and (b) it continuously provides twenty-four hour a day nursing service by registered graduate nurses, and (c) it is not, other than incidentally, a place for rest, a place for the aged, a place for drug addicts, a place for alcoholics, or a nursing home."

In answer to Special Issue No. 1, the jury found that during the period of time Walter Hagan Adams, Jr. was confined in Beaumont Remedial Clinic it was a hospital as defined in the policy.

All three of appellant's points of error are no-evidence points directed at the jury finding to Special Issue No. 1. Only evidence favorable to such finding of the jury is considered in passing upon each point of error. The evidence is undisputed.

Appellant insurance company denied liability on February 5, 1968, by letter of that date, the material portion thereof reading:

"We have the bill in the amount of $450 for services rendered Walter in the month of January by the Beaumont Remedial Clinic.

"Because of the fact that the clinic is not one that qualified, in accordance with contractual definition of a hospital under the Group Contract, we are unable to accept liability for these expenses. We feel that on reviewing the contract for the definition, you will agree."

The applicable rules in construing insurance contracts were recently reiterated in State Farm Mutual Automobile Ins. Co. v. Pan American Ins. Co., 437 S.W.2d 542, 544 (Tex.Sup., 1969), where the Supreme Court of Texas adopted and approved the following quotation in Hardware Dealers Mutual Ins. Co. v. Berglund, 393 S.W.2d 309 (Tex.Sup., 1965):

"The language used in the policies 'must be construed according to the evident intent of the parties, *to be derived from the words used*, the subject-matter to which they relate, and the matters naturally or usually incident thereto,' and it is only wne 'the words admit of two constructions, that one will be adopted most favorable to the insured.' Brown v. Palatine Insurance Company, 89 Tex. 590, 35 S.W. 1060 (1896). See 13 Tex.Jur.2d 287, Contracts, § 122." (Emphasis supplied.)

Appellant, in its third point of error, contends there is no evidence that during the confinement of Walter Hagan Adams, Jr. in Beaumont Remedial Clinic that it was a hospital as that term is defined in the certificate and policy of insurance issued by the insurance company which is above quoted. Upon submission of this cause, it was admitted by appellees that no surgery had ever been performed in Beaumont Remedial Clinic. Dr. A. E. Starkey testified by deposition that he was the Administrator and Executive Director of that Clinic. He testified:

"Q. Could you tell us whether or not Beaumont Remedial provides its

patients with surgical treatment, if that becomes necessary?

"A. If it became necessary we would, yes, but surgical treatment is not indicated for these children. If surgery were required, it would be because of an accident, not pertaining to their reason for being here. This disorder that we are treating cannot be treated surgically."

Every one of the tests in the policy definition of "hospital" must be met— not just one. All of the components of each test must be met. To qualify, Beaumont Remedial Clinic was required to be primarily engaged in providing for the surgical diagnosis *and treatment* of injured and sick persons. The word "treat" in this context is defined in Webster's Third New International Dictionary, Unabridged (1967):

"*treat* * * * 5a: to care for (as a patient or part of the body) medically or surgically: deal with by medical or surgical means: to give a medical treatment to * * *"

For Beaumont Remedial Clinic to be a hospital as defined, it had to be primarily engaged in providing surgery, when needed, in that hospital. Having physical facilities for surgery is not enough.

There is no evidence that Beaumont Remedial Clinic was primarily engaged in providing for the surgical diagnosis and treatment and care of injured and sick persons by and under the supervision of a staff of physicians. The undisputed facts show that Beaumont Remedial Clinic does not fall within the term "hospital," as defined by the policy. Guardian Life Ins. Co. of America v. Scott, 405 S.W.2d 64, 66 (Tex.Sup., 1966). Appellant's third point is sustained.

Appellant, in its Point No. 1, contends there is no evidence that, during the confinement of Walter Hagan Adams, Jr., Beaumont Remedial Clinic was primarily

engaged in providing for its patients on an in-patient basis. Dr. Starkey testified that the total of in-patients and out-patients was 148. The number of in-patients was the same as the number of out-patients. The evidence shows that in-patients required more time than out-patients. An in-patient was charged $450.00 per month, consisting of $175.00 for therapy, with the remainder of $275.00 being for room, board, and nursing services, but not including laboratory work or medications. An out-patient was only charged $175.00 per month. There were eight nurses—three licensed vocational nurses, two registered nurses, and three nurses' aids. After the therapy hour, the Clinic had eleven full-time and five part-time women and counselors to be with in-patients. The Clinic owned a building constructed and formerly occupied by a hospital as defined in the policy. Point 1 is overruled.

Appellant, in its Point 2, contends there is no evidence that, during the confinement of Walter Hagan Adams, Jr., Beaumont Remedial Clinic continuously provided 24 hour a day nursing services by registered graduate nurses. The Clinic had two registered graduate nurses. Each regularly worked eight hours a day, five days of the week. They did not work together, but at different hours so that, of 168 hours in a week, a registered graduate nurse was regularly on duty 80 hours. Each nurse was subject to call when not in the Clinic. We consider the definition of hospital in the instant case to be governed or controlled by Guardian Life Ins. Co. of America v. Scott, supra. Point 2 is sustained.

Having so held, the cross-points of error of appellees, contending the trial court erred in holding there could be no anticipatory breach of the contract of insurance between appellees and appellant, is without merit, for Beaumont Remedial Clinic was not a hospital as defined in the insurance policy. Further, appellant's motion to dismiss appellees' cross appeal is granted. Appellees filed no appeal bond and, under the holding of this court in our

Cause No. 7075, styled Consolidated Underwriters vs. Richardson, of September 4, 1969, on pages 5 and 6, such cross appeal is dismissed.

Judgment of the trial court is reversed and judgment rendered that Walter H. Adams and wife, M. G. Adams, take nothing as against Aetna Life Insurance Company. All costs are adjudged against appellees.

STEPHENSON, Justice (dissenting).

I respectfully dissent. It is my opinion that the finding of the jury, that the Beaumont Remedial Clinic, Inc. was a hospital as defined by the policy of insurance sued upon, is supported by the evidence.

It is readily agreed by all parties that under the law of this state, since policies of insurance are written by the insurer, they should be liberally construed in favor of the insured.

This policy of insurance, in its definition of "hospital" has many requirements, all of which, I feel, have been sustained by the evidence. My construction of this definition is that the "hospital" must meet this test:

1. It must provide diagnostic and therapeutic *faciliites* for:

(a) surgical and medical diagnosis, and

(b) treatment and care of injured and sick persons, both, under the supervision of a staff of physicians.

2. It must be primarily engaged in providing such facilities:

(a) for compensation, and

(b) on an inpatient basis.

3. It must continuously provide 24 hour a day nursing service by registered graduate nurses.

4. It is not (other than incidentally) a place for rest, a place for the aged, a place for drug addicts, a place for alcoholics, or a nursing home.

First, generally, the undisputed evidence shows: That appellees' son suffered from the disease, dyslexia, for which he was receiving medical treatment at the Beaumont Remedial Clinic, Inc. That this boy was the patient of Dr. W. P. Roberts, Jr., a pediatrician, who had him admitted. That Beaumont Remedial Clinic, Inc. was a member of the American Hospital Association and the Texas Hospital Association. That it occupies the former St. Therese General Hospital, and contains 90 rooms for inpatients, a pharmacy, infirmary, emergency room, therapy rooms, administrative rooms, and a cafeteria. That this boy was occupying one of these rooms on an inpatient basis.

As to the specific requirement of the policy definition of "hospital", the undisputed evidence shows: That the Beaumont Remedial Clinic, Inc. building contains a pharmacist to operate the pharmacy, lab technicians to operate the lab, a medical staff and a professional staff. Beaumont Remedial Clinic, Inc. has facilities for surgery and operations. A complete list of the surgical and diagnostic equipment was offered in evidence, and there is no suggestion that any necessary equipment was not included in this list that might be needed for the treatment and care of injured and sick persons.

The undisputed evidence shows the Beaumont Remedial Clinic, Inc. provides its facilities for compensation, and I agree with the majority opinion that it is primarily engaged in providing its facilities on an inpatient basis.

All of the evidence shows that Beaumont Remedial Clinic, Inc. is not a rest home for the aged, nor a nursing home, nor for drug addicts nor for alcoholics.

The evidence further shows: That there is round-the-clock nursing service. The nursing staff is composed of R.N.'s, L.V.N.'s and nurses' aids, providing 24 hour nursing service. That there are 2 R.N.'s, one working from 7:00 a. m. to 3:00 p. m., and the other from 3:00 p. m. to 11:00 p. m.

That these R.N.'s are on call seven days a week, but are actually present only five days a week. That these two R.N.'s are at home at other hours, and if needed are called and come. The L.V.N.'s would actually be there at all times.

Appellants' third point of error was sustained by the majority opinion, citing the Scott case, supra, as authority. The policy of insurance being construed in the Scott case was similar in its terminology in many respects, with the one we have under study. The Scott case policy required the hospital to have *facilities* for diagnosis and major surgery, and Justice Pope pointed out in that opinion that there was no dispute and the Foundation did not have the required facilities. There was no holding in the Scott case that the Foundation was not a hospital because no surgery was performed, but because there were no facilities. In the case before us, there was no requirement that surgery be performed, but only that the facilities be provided. As pointed out above, the undisputed evidence showed the facilities in our case were provided.

The only serious question is whether the Beaumont Remedial Clinic, Inc. continuously provided 24 hour a day nursing services by registered graduate nurses. There are no Texas cases passing directly upon this point. We have been cited three out-of-state cases, two of which are favorable to the position taken by plaintiffs. In McKinney v. American Security Life Ins. Co., 76 So.2d 630 (La.Ct. of App., 1954), the definition of "hospital" in the policy read in part: "* * * and which has a Graduate Registered Nurse always on duty." That court held the institution to be a hospital even though it had only one graduate registered nurse on duty a major portion of the day. That court pointed out the difficulty for a hospital in a rural area to meet technical requirements which have no important relation to the treatment of the policy holder. In Meyers v. Aetna Life Ins. Co., 207 Pa.Super. 526, 218 A.2d 851 (1966), the policy definition of "hospi-

tal" read in part: "* * * and which provides the services of registered nurses (R.N.) 24 hours a day. * * *" That court held it was sufficient if the services of a registered nurse were available on a 24 hour a day basis.

It is my opinion that Beaumont Remedial Clinic, Inc. continuously provided twenty-four hour a day nursing service by registered graduate nurses, and complied with the terms of the insurance policy before us, in that respect.

As mentioned above, this policy of insurance contained several specified exclusions. If the insurer desired to exclude hospitals for the treatment of dyslexia from its coverage, it would have been a simple matter to list it along with the others.

I would affirm the trial court judgment.