**INTERNATIONAL SECURITY LIFE INSURANCE CO., Appellant,**

v.

**Arvel A. ARANT, Appellee.**

No. 8093.

Court of Civil Appeals of Texas, Amarillo.

Jan. 25, 1971.

Rehearing Denied Feb. 22, 1971.

**524**

Gillespie & McClendon, Lubbock, Bryan & Amidei, Maurice Amidei, Fort Worth, for appellant.

Thomas J. Griffith, Lubbock, for appellee.

REYNOLDS, Justice.

This suit was instituted by appellee to recover on a policy of medical and hospital insurance issued by appellant. From a judgment, entered by the trial judge without the intervention of a jury, in favor of appellee for the indemnities claimed, statutory penalty and attorney's fees, appellant has appealed, assigning five points of error.

In consideration of the payment by appellee of the annual premium, appellant issued its hospital and surgical policy effective February 15, 1968, insuring appellee and his wife against loss incurred only while confined as a bed patient to a "Legally Constituted Hospital" resulting from accidental bodily injury or sickness originating from the issue date and while the policy is in force, subject to the exclusions, limitations, provisions and reductions set out in the policy, Mrs. Arant was hospitalized by Dr. Stettner, her treating doctor, from October 28 to November 4, 1968, in Lubbock Osteopathic Hospital where a bunionectomy was performed by Dr. Scioli on October 29, 1968.

Appellee moves this court to strike appellant's first two points of error for the reason that each is a no evidence and an insufficient evidence point and, therefore, each is multifarious and too general to be considered under Rule 418, Texas Rules of Civil Procedure. We believe the points as presented are only "no evidence" points that are sufficient to direct the court's attention to the error relied upon, Fambrough v. Wagley et al., 140 Tex. 577, 169 S.W.2d 478 (1943), and, overruling appellee's motion, we will consider the points. Since no findings of fact or conclusions of law were requested of, or filed by, the trial judge, we must determine, in considering these points, as well as two other assignments of error contending there is no evidence to support the trial court's judgment, whether there is any evidence that tends to support the judgment and the implied findings of fact upon which it is based, and

must disregard entirely all evidence and inferences which would lead to contrary conclusions. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950).

In its first point appellant alleges there was no evidence that the Lubbock Osteopathic Hospital was not an institution operated primarily or principally as a rest home, convalescent home, clinic, maternity home, nursing home or a home for the care of the aged, and therefore it was not proved that such hospital was a "Legally Constituted Hospital" as defined in the policy. The insurance policy defines a "Legally Constituted Hospital" as an·"institution licensed by law which has its own laboratory, X-ray equipment and an operating room where major surgical operations may be performed, and which maintains permanent and full-time facilities for the care of overnight resident patients under the supervision at all times by a licensed Doctor of Medicine (M.D.) or Osteopathy (D.O.) and a Graduate Registered Nurse, and which maintains complete and permanent records on the history of each patient. The term 'Legally Constituted Hospital' does not include institutions operated primarily or principally as rest homes, convalescent homes, clinics, maternity homes, nursing homes or homes for the care of the aged, * * *".

The Texas Hospital Licensing Law, Vernon's Ann.Civ.St. Article 4437f, requires each hospital to obtain a hospital license from the State Board of Health, and specifically excludes from its licensing provisions rest homes, convalescent homes, maternity homes and related institutions that are not required to meet the statutory standards of a hospital and are required to be separately licensed under Article 4442c, V.A.T.S. The administrator of the Lubbock Osteopathic Hospital testified that the hospital was licensed by "The Texas State Department of Health, Bureau of Licensing" and was so licensed in 1968; and that it had on the premises laboratory facilities, X-ray equipment, an operating room where major surgical operations might be performed, permanent and full-time facilities for the care of overnight resident patients, affords the patients the supervision at all times of a licensed Doctor or Doctor of Osteopathy, and of a graduate registered nurse, and maintains complete permanent records on the history of each patient. There is no evidence contradicting the administrator's testimony or indicating that the institution might be operated primarily or principally as an institution other than a hospital.

Appellant makes no attack on appellee's proof that the Lubbock Osteopathic Hospital meets the criteria of what a legally constituted hospital must be to come within the definition appellant placed in the policy, but complains that since there was no proof that it was not a policy excluded institution, it follows that the hospital was not a legally constituted hospital defined in the policy. Appellant cites Aetna Life Insurance Company v. Adams et ux., 447 S.W.2d 453 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.), for the holding that every one of the tests in the policy definition of "hospital" must be met. There, unlike the policy now before us, the policy provided in one sentence that the term 'hospital' "means only an institution which meets fully every one of the following tests * * *" and, after designating what the insitution must be primarily engaged in to be an eligible hospital, the policy provision, by the use of the conjunctive "and", excluded certain institutions. There the evidence showed the institution was not one of the excluded places or home.

We believe the different phraseology employed in the policy now before us distinguishes it from the one before the court in Aetna Life Ins. Co. v. Adams et ux., supra. There it was required that the eligible hospital "meets fully every * * * test", and the conjunctive "and" was used to include one of the tests of the hospital definition. The conjunctive "and" expresses the general relation of connection or addition, especially combination, Webster's New International Dictionary, Second

Edition, and signifies something to follow, expressing the idea that what follows is added and taken along with the first. 3 Words and Phrases, "And", pp. 569 et seq. The hospital definition in the policy being considered by us has no such requirements.

■ Thus, we are called upon to construe the meaning of the hospital definition provision set forth in the policy. In order to arrive at the true intention of the parties expressed in the language chosen by the insurer in its policy, if it contains inconsistent terms, the well-known rule that insurance contracts should be construed strictly against the insurer, and in favor of the insured, will prevail. McCaleb v. Continental Casualty Co., 132 Tex. 65, 116 S. W.2d 679 (1938). Furthermore, exceptions to coverage and limitations upon liability under policies should be strictly construed against the insurer. National Bankers Life Ins. Co. v. Hornbeak, 266 S.W.2d 228 (Tex.Civ.App.—Waco 1954, n. w. h.). In the policy under consideration appellant uses the words of its choice to define what shall constitute a hospital, and then employs a separate sentence to state what the term "Legally Constituted Hospital" does not include. Applying the rule of interpretation known as the maxim *inclusio unius exclusio alterius*, this policy provision must be construed as excluding those not of a like kind or classification and, thus, where the policy undertakes to enumerate the definitive characteristics of a legally constituted hospital, proof that an institution embraces those characteristics excludes all other institutions, including those named in the policy as not being a legally constituted hospital. Under the authorities the evidence amply supports the trial judge's implied finding that the Lubbock Osteopathic Hospital is a legally constituted hospital under the provisions of this policy, and we overrule appellant's first assignment of error.

■ Appellant's second point is to the effect that appellee did not prove the sickness did not originate prior to February 15, 1968, the effective date of the policy. Dr. Scioli, on October 29, 1968, entered a notation on the hospital records reflecting pain and swelling of both of Mrs. Arant's feet "over past two years". Mrs. Arant denied giving this information to the doctor and testified she never had any symptoms, complaints, or been treated for the portion of her foot on which surgery was performed until three or four days before she consulted Dr. Scioli on October 14, 1968. Apparently the trial judge, as he was authorized to do, rejected the doctor's opinion evidence. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948). In a non-jury trial, the court sits as the trier of the facts and is the judge of the credibility of the witnesses and the weight to be given the testimony. The court was not bound by the testimony of any one witness, but could accept all, part or none thereof, or draw his own deductions from all the evidence. Southland Life Ins. Co. v. Aetna Casualty & Surety Co., 366 S.W. 2d 245 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n. r. e.). We hold the evidence is sufficient to support the trial court's implied finding that the sickness arose subsequent to the effective date of the policy, and overrule the second point of error.

The surgery was performed by Dr. Eugene Scioli, a podiatrist or Doctor of Podiatric Medicine. The policy provides, in Part III, for payment of the "customary charges for the services of Doctors of Medicine (M.D.) or Osteopathy (D.O.) including charges for surgical procedures." An endorsement to the policy amends it by providing: "Any payments provided under the provisions of this policy payable to a practicioner (sic) of the healing arts shall not be made to any other than a licensed Doctor of Medicine or a licensed Doctor of Osteopathy unless specifically provided in such provision." By its assignment of error No. 3, appellant advances the contention that the fee of Dr. Scioli, allowed by the trial court, is not payable under the terms of the policy.

Article 3.70–2(B) of the Insurance Code, Vernon's Ann.Civ.St. Article 1.01 et seq., requires that effective January 1, 1968:

"No policy of accident and sickness insurance shall make benefits contingent upon treatment or examination by a particular practitioner or by particular practitioners of the healing arts hereinafter designated unless such policy contains a provision designating the practitioner or practitioners who will be recognized by the insurer and those who will not be recognized by the insurer. * * * In designating the practitioners who will and will not be recognized, such provisions shall use the following terms: * * * Doctor of Podiatry * * *."

Article 22.13, Section 2(a) of the Code requires health, accident, sickness and hospitalization policies to conform with Art. 3.-70.

■ It does not appear that our courts heretofore have construed Art. 3.70 with reference to whether it is mandatory or permissive. The purpose of statutory construction is to ascertain the intent of the Legislature and to give effect to its purpose or plan. The word "shall" has a clear mandatory construction, and the courts of this state generally have held the word to be mandatory when used in statutes. 39 Words and Phrases, "Shall—In Statutes", beginning on page 123. We believe the provisions of Art. 3.70 of the Insurance Code are clear and, when considered in relation to the purpose and plan of the Legislature in enacting the Code, lead us to the inescapable conclusion that it is mandatory that any excluded practitioner is to be specifically listed by medical classification. In so construing the statute, particularly in light of the rule that limitations upon liability under policies should be strictly construed against the insurer, we hold that this policy does not exclude payment of the services of a podiatrist or Doctor of Podiatry, and appellant's point of error No. 3 is overruled.

■ Dr. Max M. Stettner was the doctor who admitted Mrs. Arant to the hospital and the supervisory physician during her stay. Appellant, in its point No. 4, challenges the trial court's allowance of the charges for his services on the assertion that there is no evidence to show Dr. Stettner was licensed by the Texas Board of Medical Examiners on the basis of the degree of "Doctor of Osteopathy" at the time in question. Dr. Stettner testified, without objection, that he has a Doctor of Osteopathy degree granted in 1955, he is an osteopathic physician and surgeon licensed to practice in Texas, has been practicing in Lubbock, Texas, since July, 1956, and is a member of the staff and qualified to practice at Lubbock Osteopathic Hospital. Our Texas Hospital Licensing Law, Vernon's Ann.Civ.St. Art. 4437f, under which Lubbock Osteopathic Hospital is licensed, requires, in Section 7, before a license shall be issued, evidence that the physicians on the medical staff are currently licensed by the Texas State Board of Medical Examiners. In Section 2(e) of the Law, "medical staff" is defined to mean physician or group of physicians licensed to practice medicine by the Texas State Board of Medical Examiners. The hospital administrator testified that the hospital was licensed in 1968. We hold the evidence is legally sufficient to establish the trial judge's implied finding that Dr. Stettner currently was licensed by the Texas State Board of Medical Examiners at the time in question, and overrule point of error No. 4.

■ In its fifth point appellant alleges there is no evidence that appellee made demand upon appellant to pay the claim and that 30 days thereafter elapsed before suit was filed which would permit appellee to recover the statutory penalty and attorney's fees. Our Insurance Code, Vernon's Ann.Civ.St. Article 3.62, requires a demand and failure to pay the claim within 30 days as a prerequisite to the recovery of the statutory penalty and attorney's fees. The evidence received by the trial court shows

that upon filing proof of loss appellant refused to pay the claim and on December 4, 1968, appellee's attorney made written demand for payment which was refused on December 9, 1968. Thereafter, appellee's original petition, which was not made a part of the transcript, is shown by the record to have been filed on January 10, 1969, more than 30 days after the refusal of the demand to pay the claim. Appellant's original answer denying liability was filed February 28, 1969, and alleges "A proof of loss was first filed with the Defendant by Plaintiff on November 15, 1968, and a formal demand was made by Plaintiff on December 4, 1968". What appellant has expressly admitted is regarded as true, is conclusive against the pleader, and appellant will not be heard to complain on appeal that the trial court found the fact as he alleged it. 45 Tex.Jur.2d Pleading, VI. Admissions, Section 81 et seq. The assignment of error is without merit and must be overruled. Another reason why this point must be overruled is that appellee went to trial on the second amended petition filed on February 19, 1970, with appellant still denying liability and failing to make any payment on the claim, but failing to plead no demand, which brings this point within the holding in International Security Life Ins. Co. v. Ramage et ux., 446 S.W.2d 944 (Tex.Civ.App.—Amarillo 1969, writ ref'd n. r. e.), which has decided the point adverse to appellant's position. The cases cited by appellant for the proposition that the filing of suit or filing of proof of loss or denial of the claim does not constitute a demand under Art. 3.62 are inapplicable to this fact situation since the evidence here shows a formal written demand for payment and a failure and refusal to pay the same within 30 days.

The judgment of the trial court is affirmed.

ELLIS, C. J., not sitting.