**AETNA LIFE INSURANCE COMPANY, Appellant,**

v.

**Georgeanna DECKARD, a minor, by her next friend and father, D. T. Deckard, and D. T. Deckard, Individually, Appellees.**

**No. 8323.**

Court of Civil Appeals of Texas, Amarillo.

Dec. 11, 1972.

Rehearing Denied Jan. 2, 1973.

Gibson, Ochsner, Adkins, Harlan & Hankins, Wayne Sturdivant, Amarillo, for appellant.

Merchant, Barfield & Poff, Wayne B. Barfield, Amarillo, for appellees.

REYNOLDS, Justice.

The appellate issue is whether the Killgore Children's Psychiatric Center & Hospital in Amarillo is a "hospital" as defined in the insurance policy under which hospital benefits were sought. In response to

the one issue submitted, the trial court jury found that the institution was a hospital within the meaning of the policy definition, and judgment was entered accordingly. We hold that the definitive hospital requirements of the policy were not met. Reversed and rendered.

Aetna Life Insurance Company issued its group hospital expense benefit policy to D. T. Deckard, whose daughter, Georgeanna Deckard, became an insured family member thereunder. Among other coverage, the policy provided daily hospital and major medical benefits if, solely because of any non-occupational injury, an insured family member became confined in a hospital. The policy declared that:

"(i) The term 'hospital' means only an institution which meets fully every one of the following tests, namely, (a) it is primarily engaged in providing—for compensation from its patients and on an in-patient basis—diagnostic and therapeutic facilities for the surgical and medical diagnosis, treatment, and care of injured and sick persons by or under the supervision of a staff of physicians, and (b) it continuously provides 24 hour a day nursing service by registered graduate nurses, and (c) it is not, other than incidentally, a place for rest, a place for the aged, a place for drug addicts, a place for alcoholics, or a nursing home."

While the policy was in force, Georgeanna Deckard was admitted to Killgore Children's Psychiatric Center & Hospital, hereinafter designated as Killgore, a specialty hospital for children's psychiatry, specializing in the diagnosis and treatment of mental illness in children aged seventeen and under. The admission was on an in-patient status for treatment of a psychological condition, manifested primarily by a personality change. During her confinement treatment, X-rays were indicated and these were taken at a nearby hospital by virtue of a contractual arrangement between Killgore and that hospital. In conformity with the arrangement, that hospital charged Killgore for the services and Killgore charged the amount to the patient. Following her discharge, Aetna paid the medical benefits provided by the policy, but denied D. T. Deckard's claim for hospital benefits on the ground that Killgore was not a "hospital" within the definition contained in the policy. This suit was then filed to recover the policy hospital benefits for Georgeanna Deckard's hospitalization at Killgore.

During the trial, the court denied Aetna's timely presented motions for instructed verdict and judgment non obstante veredicto. These denials constitute the basis of Aetna's point of error, which is that as a matter of law Killgore is not a hospital within the policy definition. The point of error is sustained.

The undisputed evidence, a limited specificity of which is illustratively recited, establishes that Killgore is not primarily engaged in providing diagnostic and therapeutic facilities for the surgical diagnosis, treatment and care of injured persons on an in-patient basis. Killgore has one surgical-medical room equipped with the tools for minor surgery and medical care. The minor surgery performed is in the nature of suturing lacerations. The administrator testified that the distinction between minor and major surgery is "(u)sually, if an anaesthetic is indicated." Persons in need of surgery are not admitted for that purpose. Except for the minor surgery noted, surgery is not, and never has been, performed on Killgore's premises. Anaesthetics are not administered and broken bones are not treated at the institution. Killgore does not have the facilities or equipment for major surgery. There is no laboratory nor any X-ray, electroencephalogram or electrocardiogram equipment. All of these facilities and services, together with radiological, pathological and pharmaceutical facilities and services, are available to and provided for Killgore's patients by and at a nearby hospital and other area hospitals through contractual arrangements with Killgore. The contractual procedure is

that the involved hospital's services are charged to Killgore which, in turn, charges the amount to the patient for whom the services are performed. One of the staff doctors testified that surgery could not be performed at Killgore and if a surgical procedure was to be performed, the patient would be discharged from Killgore and admitted to the hospital where the surgery would be performed.

The decisional language in Aetna Life Insurance Company v. Adams, 447 S.W.2d 453 (Tex.Civ.App.—Beaumont 1969, writ ref'd n. r. e.), dictates that under the evidence presented here, Killgore is not a "hospital" within the ambit of the hospital definition contained in the policy. The same policy definition of a hospital was considered in *Adams* and, after holding that every one of the tests in the policy hospital definition must be met, that appellate court said that having facilities for surgery, as the clinic there did, was not sufficient to meet the test; for the institution ". . . to be a hospital as defined, it had to be primarily engaged in providing surgery, when needed, in that hospital. . . ." There, the fact that the institution performed no surgery, although surgical facilities were available in the institution, disqualified it as a policy defined hospital. Here, not only does Killgore not perform surgery when needed, it does not have the facilities for that surgery on or within its premises.

Plaintiffs contend that since the policy only requires that the hospital be engaged "in providing" the enumerated facilities, such facilities not available at Killgore are "provided" by Killgore to its in-patients through its contractual arrangements with other hospitals. The policy provision renders the contention untenable. The obligatory "on an in-patient basis" clause demands that, to qualify under the policy definition, the hospital must provide the requisite facilities *in that hospital*. Aetna Life Insurance Company v. Adams, supra. Thus, the indispensable facilities are required to be in Killgore, and not in an ad-

jacent hospital. The policy benefits are neither provided nor payable if some of such constituent facilities are provided and made available by and in a hospital located at a place different from Killgore's premises. Guardian Life Ins. Co. of America v. Scott, 405 S.W.2d 64 (Tex.Sup.1966). This policy disqualification is especially applicable to Killgore since its in-patient is discharged prior to utilization of another institution's surgical facilities not available at Killgore.

The judgment of the trial court is reversed, and a take-nothing judgment against plaintiffs is rendered.