PHILLIPS PETROLEUM COMPANY,
Appellant,

v.

John F. GILLMAN et al., Appellees.

No. 9047.

Court of Civil Appeals of Texas,
Amarillo.

Jan. 16, 1980.

Rehearing Denied Feb. 6, 1980.

T. L. Cubbage, II, Kenneth Heady and C. J. Roberts, Bartlesville, Okl., Jack Ritchie and C. H. Drinnen, III, Amarillo, for Phillips Petroleum Co.

Gassaway, Gurley, Sheets & Mitchell, Jody G. Sheets, Borger, for appellees.

DODSON, Justice.

Phillips Petroleum Company appeals from an adverse judgment entered by the trial court in the amount of $21,276.49 in favor of John F. Gillman and Billy M. Gillman d/b/a Traveler Oil Company. We affirm.

The Gillmans sold casinghead gas produced from properties located in the Panhandle Field of Texas to Phillips under certain casinghead gas contracts.[1] These contracts

---

1. The "Panhandle Field of Texas", as defined in the contracts, includes Hartley, Moore, Hutch-inson, Carson, Gray and Wheeler counties of Texas. Phillips has been purchasing casing-

provided that the Gillmans were to be paid a percentage of the resale price received by Phillips from third party purchasers. Phillips sold portions of the casinghead gas to interstate purchasers.

The interstate sales were subject to the rate and price regulatory authority of the Federal Power Commission.[2] At various times, Phillips made applications to the Federal Power Commission for price increases on the interstate sales. Pending final determination of the just and reasonable rate, Phillips collected the proposed price increases under procedures prescribed by law.[3] Phillips retained all of the proposed price increase funds which were in excess of the established rates. These funds were comingled with and placed in Phillips' general corporate operating funds.

After executing indemnity agreements required by Phillips which provided for reimbursement of unsustained portions of the proposed price plus interest, the Gillmans received their portion of the proposed price increases on the interstate sales. Subsequently, on final determination, the Federal Power Commission sustained portions of the proposed price increases.[4] The Gillmans reimbursed the unsustained portions of the increase with interest.

In *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480 (Tex.1978), the court determined that Phillips, as purchaser of casinghead gas from Stahl, owed interest on Stahl's portion of the increased prices which Phillips had collected from interstate purchasers pending final approval of the proposed rate increases by the Federal Power Commission.[5] Proceeding under the rationale of *Stahl*, the Gillmans instituted this action to recover interest on their portion of sustained price increases for the period of

time the funds were retained and used by Phillips in its general corporate operations. Phillips alleged the defenses of waiver and novation by virtue of provisions contained in the casinghead gas purchase agreements made and executed subsequent to the payments by Phillips to the Gillmans under the indemnity agreements.[6] The parties stipulated that the interest amount was $21,-276.49. After a bench trial, the court entered judgment in favor of the Gillmans for this amount.

Phillips agrees, for the purposes of this appeal, that the Gillmans are entitled to the interest awarded under the *Stahl* theory unless the subsequent contracts provide complete defenses of contractual release and waiver of the Gillmans' cause of action. In this connection Phillips contends, *inter alia*, that the subsequent casinghead gas agreements constitute a novation discharging Phillips' obligation to pay interest to the Gillmans because the undisputed evidence shows the four elements of novation are present and that "the contracts' language specifically acknowledges payment in full of all sums owed and waives and releases the causes of action relating thereto." The Gillmans maintain that their cause of action is for interest on the retained funds rather than for payments of "sums owed . . . for gas, whether from oil wells or gas wells produced from the land described" in any previous contracts; that by executing the subsequent casinghead gas contracts they did not novate, release or waive any cause of action for interest on the retained funds; and that the subsequent contracts are simply new agreements between the parties for the sale and purchase of casinghead gas at an increased price.

head gas under these contracts for many years beginning in the 1940's.

2. *See Phillips Petroleum Co. v. State of Wisconsin*, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035 (1954).

3. 18 C.F.R. § 154.102(b)(1).

4. *See In re Hugoton-Anadarko Area Rate Case*, 466 F.2d 974 (9th Cir. 1972); F.P.C. Opinion

No. 586, Docket No. AR64–1, Hugoton-Anadarko Rate Case, 44 F.P.C. 761 (1970).

5. For other cases in accord see *Phillips Petroleum Co. v. Hazelwood*, 534 F.2d 61 (5th Cir. 1976); *Phillips Petroleum Co. v. Adams*, 513 F.2d 355 (5th Cir. 1975); *Fuller v. Phillips Petroleum Co.*, 408 F.Supp. 643 (N.D.Tex.1976).

6. The subsequent casinghead gas contracts are dated April 16, 1973 and June 17, 1974.

The provision in the subsequent contracts relied on by Phillips provides as follows:

18. TERMINATION OF PRIOR CONTRACTS AND RELEASE—This contract terminates and supersedes any prior contracts between the parties hereto to the extent that such contracts cover the purchase and sale of gas covered by this contract. In consideration of the covenants herein contained, *Seller hereby acknowledges payment in full* by Buyer *of all sums owed* Seller by Buyer *for gas*, whether from an oil well or gas well, produced from the land above described prior to the date of this contract, *and hereby releases and waives all causes of action therefor* (emphasis added).

In essence, Phillips is requesting us to construe the agreement to include by implication the word "interest" or the phrase "all sums owed for interest on retained or used funds." We must decline.

■ We agree with the parties that the subsequent casinghead gas contracts and more particularly the above quoted provision relied on by Phillips are unambiguous. Without ambiguity necessitating an inquiry beyond the contracts' language, the meaning of the agreement becomes a question of law for the court. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962). As a matter of law, the meaning of the contract is determined by the language used therein, *Tower Contracting Co., Inc. v. Flores*, 157 Tex. 297, 302 S.W.2d 396, 399 (1957), which is to be construed by the court. *Republic National Life Insurance Co. v. Spillars*, 368 S.W.2d 92, 94 (Tex.1963). Furthermore, the terms used in the contract must be given their plain, ordinary and generally accepted meaning unless the instrument itself shows the terms are used in a different sense. *Western Reserve Life Insurance Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953). Moreover, in construing the agreement we must adhere to the maxim that "the expression of one thing is the exclusion of another thing." *See Blythe v. Speake*, 23 Tex. 429, 432 (1859).

■ Applying the above principles to the contract provision relied on by Phillips, we must conclude that the amount owed for interest is not a "sum owed for gas." The phrase "payment in full of all sums owed . . . for gas" is one thing and the phrase "payment in full of all sums owed for interest on the retained funds" is another. Interest is defined as "the price or rate of premium per unit of time paid by a borrower for use of what he borrows; specif., *a rate per cent of money paid for the use of money* or on an overdue debt; also the money so paid" (emphasis added). Webster's New Collegiate Dictionary 439 (1953).

In *Morrow v. Morgan*, 48 Tex. 304, 308 (1877), our supreme court said: "The maxim, that 'the express mention of one thing implies the exclusion of another,' is ordinarily used to control, limit or restrain the otherwise implied effect of an instrument, and not to 'annex incidents to written contracts in matters with respect to which they are silent.'" *Accord, International Security Life Insurance Co. v. Arant*, 463 S.W.2d 523, 526 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.). The word "interest" or the phrase "all sums owed for interest on retained, borrowed or used funds" are not mentioned in the contract provision relied on by Phillips or at any other place in the subsequent casinghead gas agreements.

■ In the absence of matters beyond the record in this case such as fraud or mutual mistake, the court cannot make a new contract for the parties, or add to, modify or change in any particular an agreement made by the parties. *See Magnolia Petroleum Co. v. Connellee*, 11 S.W.2d 158, 160 (Tex.Com.App.1928, judgmt adopted); 13 Tex.Jur.2d *Contracts* § 130 (1960) and the authorities cited therein under notes 15, 16, & 17 at p. 308, 309. Assuming arguendo, the presence of the essential elements of novation, we must conclude that the subsequent casinghead gas contracts are no more than new agreements by the parties for the sale and purchase of gas at a greater price; and that the Gillmans did not novate, release or waive their cause of

action for interest on the retained funds by executing the subsequent casinghead gas contracts.

In summary, we overrule Phillips' contentions that the Gillmans, by executing the subsequent casinghead gas contract, novated, released and waived their cause of action for interest on the retained funds. Our disposition of these contentions is dispositive of this appeal. Nevertheless, in its brief, Phillips assigns fifty-four points of error. There are aspects related to the points and contentions discussed which we have not specifically addressed; however, we have reviewed and considered each point and conclude that they present no reversible error. Accordingly, the judgment of the trial court is affirmed.

COUNTISS, J., not participating.