

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00358-CV

**PDS ACQUISITION, CORP.** n/k/a USIO Output Solutions, Inc.,
Appellant

v.

**KDHM, LLC**,
Appellee

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2021CI18410
Honorable Marisa Flores, Judge Presiding

Opinion by:     Adrian A. Spears II, Justice

Sitting:        Lori I. Valenzuela, Justice
                Adrian A. Spears II, Justice
                H. Todd McCray, Justice

Delivered and Filed: April 2, 2025

REVERSED AND RENDERED IN PART AND REMANDED IN PART

This appeal stems from a dispute surrounding KDHM, LLC's sale of its printing business to PDS Acquisition Corp. n/k/a USIO Output Solutions, Inc. ("USIO"). The Asset Purchase Agreement ("APA") provided that certain assets were to be excluded from the sale, and in particular, Article 2.1(c)(i) excluded from the sale "Seller's bank accounts and cash, except for the Customer Deposits to the extent that they have not been earned and offset against Seller's accounts receivable prior to the [c]losing [d]ate." The meaning of Article 2.1(c)(i) is the basis of this appeal. We hold that because the customer deposits at issue were earned by KDHM, but not accounted for

by offsetting the deposits against KDHM's accounts receivables prior to closing, the customer deposits were not "Excluded Assets" within the meaning of Article 2.1(c)(i) and were thus properly transferred to USIO. We therefore reverse the trial court's judgment and render judgment that KDHM should take nothing against USIO on its "money had and received claim." With respect to the remaining claims, we remand the cause for further proceedings consistent with this opinion.

## BACKGROUND

On December 15, 2020, USIO and KDHM entered into the APA, in which USIO bought the printing business from KDHM. Among the "Purchased Assets" were KDHM's accounts receivable, inventories and supplies, equipment, permits, contracts, customer lists, intellectual property, claims, customer deposits, books and records, business name, and work in progress. Article 2.1(c)(i) further provided that certain assets were excluded from the sale:

> (c)  Excluded Assets.  Notwithstanding anything herein to the contrary, the Purchased Assets shall not include (collectively, the "Excluded Assets"):
>
> (i)  Bank Accounts.  Seller's bank accounts and cash, except for the Customer Deposits to the extent they have not been earned and offset against Seller's accounts receivable prior to the Closing Date;

After the closing date, the parties disagreed about whether certain customer deposits, which had been earned but not offset against accounts receivable before closing, were "Excluded Assets" under the APA.

On September 1, 2021, KDHM brought a legal action for "money had and received" against USIO, alleging that money had been mistakenly paid to USIO at closing and that USIO held money that belonged to KDHM. On September 30, 2021, USIO filed counterclaims against KDHM for fraud, breach of contract, and conversion. On July 25, 2023, USIO filed a traditional motion for summary judgment, arguing that under the plain meaning of the APA, the customer deposits at issue were not retained by KDHM because they had not been both earned and offset

before closing. According to USIO, the summary judgment evidence conclusively established that no money was owed to KDHM and that judgment should be rendered that KDHM take nothing on its "money had and received" claim.

On July 27, 2023, KDHM filed a traditional motion for *partial* summary judgment, arguing that it was entitled to a portion of the proceeds transferred to USIO at closing. KDHM admitted that "the funds in question had been 'earned,' but had not been offset against [its] accounts receivable prior to the closing date." However, KDHM argued that under the plain reading of Article 2.1(c)(i), the funds in question did not need to be both earned and offset. KDHM noted that pursuant to Article 2.1(c)(i), the "Purchased Assets" excluded KDHM's bank account and cash "except for the Customer Deposits to the extent they have not been earned and offset against [KDHM's] accounts receivable prior to the Closing Date." KDHM then argued the following:

> Thus, bank accounts are included among the Excluded Assets, with an exception provided as to Customer Deposits that have not been "earned and offset against [KDHM's] accounts receivable." Thus, to fit within the exception to the exclusion, the Customer Deposits within the bank account must both (1) have not been earned and (2) have not been offset against [KDHM's] accounts receivable. The exception for Customer Deposits plainly requires *both* that the funds have not been earned *and* that they have not been offset. [] Since the funds in question *had* been earned, but had not been offset against [KDHM's] account[s] receivable, the exception to the exclusion does not apply. [] Because the exception to the exclusion of Customer Deposits from the "Excluded Assets" does not apply, [KDHM] was legally entitled to receive the Customer Deposits in question because they had been earned by [KDHM] but had not been offset, and were thus excluded from the assets being purchased.

At the conclusion of its motion, KDHM "pray[ed] that the court enter partial summary judgment in its favor as to the issue of whether earned customer deposits[,] which had been earned but which had not been offset against [KDHM's] account[s] receivable prior to the closing date[,] rightfully belong to [KDHM]."

Both summary judgment motions acknowledged that the customer deposits at issue in this appeal were earned by KDHM but were not offset against KDHM's accounts receivable before

the closing date. Thus, the sole issue before the trial court in both summary judgment motions was the construction of the APA on the issue of whether the customer deposits at issue were "Excluded Assets" as that term is defined in Article 2.1(c)(i).

On September 14, 2023, the trial court granted partial summary judgment in favor of KDHM and denied USIO's motion for summary judgment, ruling that

> as to the unambiguous provision of the [APA], which is the subject of the respective [m]otions, (a) Customer Deposits in KDHM's bank accounts for materials KDHM had printed and mailed, and for which the United States Postal Service had been paid by KDHM prior to the closing of the sale of the business to USIO, but not offset against KDHM's Accounts Receivable, are Excluded Assets and thus remained the property of KDHM and (b) Customer Deposits in KDHM's bank accounts are for items, whether printed or not, but which had not been mailed as of the closing of the sale of the business are not Excluded Assets and belong to USIO as of the conclusion of closing.

On November 9, 2023, KDHM filed a second amended petition, adding claims for conversion and breach of contract against USIO. KDHM later nonsuited its breach of contract claim against USIO. USIO then filed a motion to reconsider the trial court's order granting partial summary judgment. On January 19, 2024, the trial court signed a revised order granting partial summary judgment in favor of KDHM and denying USIO's motion for summary judgment. The trial court interpreted Article 2.1(c)(i) of the APA as follows:

> (a) Customer Deposits in KDHM's bank accounts [that] had been earned by KDHM prior to the closing date of the sale to USIO and [that] had not been offset against KDHM's Accounts Receivable prior to the closing of the sale to USIO are "Excluded Assets" and thus remained the property of KDHM as the conclusion of the closing; and
> (b) Customer Deposits in KDHM's bank accounts [that] had not been earned by KDHM and had not been offset against KDHM's Accounts Receivable prior to closing are not "Excluded Assets," and belonged to USIO as of the conclusion of closing.

On February 5, 2024, KDHM filed a motion for judgment pursuant to Texas Rule of Civil Procedure 248.[1] as to its "money had and received" claim, arguing that USIO had waived its affirmative defenses to that claim by not asserting them at the time the trial court considered the parties' competing summary judgment motions. Also on February 5, 2024, USIO filed its own motion pursuant to Texas Rules of Civil Procedure 166(g) and 248, arguing that the economic loss rule precluded KDHM's conversion claim and requesting dismissal of that claim. On February 8, 2024, KDHM file a "Supplemental 166(g) Motion and Response to Defendant's Rule 166(g) and Rule 248 Motion," again arguing that USIO had waived its affirmative defenses and responding to USIO's economic loss rule argument. On February 26, 2024, USIO filed a "Second Rule 166(g) and Rule 248 Motion," requesting that the trial court dismiss KDHM's conversion and "money had and received" claims against it. The trial court granted KDHM's motion under Rule 248, and on May 2, 2024, signed a final judgment awarding KDHM damages in the amount of $397,739.40 and attorneys' fees in the amount of $90,361.75, plus pre- and post-judgment interest. USIO appealed.

On appeal, USIO brings the following four issues: (1) whether the trial court erred in finding that certain Customer Deposits were "Excluded Assets" under the APA and thus erred in granting KDHM's motion for partial summary judgment and denying USIO's motion for summary judgment; (2) whether the trial court erred in granting KDHM's supplemental Rule 248 motion and finding that USIO waived its affirmative defenses by not raising them at the time the trial court considered the parties' summary judgment motions; (3) whether the trial court erred in awarding KDHM attorneys' fees on a "money had and received" claim; and (4) whether the trial court erred

---

[1]Texas Rule of Civil Procedure 248 provides in part that "[w]hen a jury has been demanded, questions of law, motions, exceptions to pleadings, and other unresolved pending matters shall, as far as practicable, be heard and determined by the court before trial commences." TEX. R. CIV. P. 248.

in awarding KDHM the attorneys' fees of Don Cuba, who was not counsel of record for KDHM in the trial court proceeding.

## MOTIONS FOR SUMMARY JUDGMENT

### A.  Standard of Review

USIO first argues that the trial court erred in granting KDHM partial summary judgment and in denying USIO's motion for summary judgment. Both USIO and KDHM based their respective motions for summary judgment on their competing interpretations of Article 2.1(c)(i). We review a trial court's decision to grant summary judgment de novo. *Exxon Corp. v. Emerald Oil & Gas Co.,* 331 S.W.3d 419, 422 (Tex. 2010); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In order to prevail on a traditional motion for summary judgment, the movant must show there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). If the movant satisfies this burden, the burden shifts to the respondent to provide evidence that raises a genuine issue of material fact. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). The reviewing court must consider all the evidence in the light most favorable to the respondent, indulging every reasonable inference in favor of the respondent and resolving any doubts against the motion. However, in doing so, a court cannot ignore undisputed evidence unfavorable to the respondent. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (explaining that the "court of appeals erred in considering only the evidence favorable to [the respondent], ignoring undisputed evidence in the record that cannot be disregarded").

Additionally, "[b]ecause courts construe unambiguous contracts as a matter of law, a trial court may render summary judgment on an unambiguous contract." *Smart v. 3039 RNC Holdings, LLC*, No. 04-22-00426-CV, 2023 WL 3328168, at *2 (Tex. App.—San Antonio May 10, 2023,

pet. denied) (citing *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017)). However, "if a contract is ambiguous, summary judgment is inappropriate because the meaning of an ambiguous contract presents a question of fact." *Id*. (citing *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022)). When cross-motions for summary judgment are filed, we consider each motion and render the judgment the trial court should have reached. *Coastal Liquids Transp., LP v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001).

### B. Applicable Law

The sole issue of the competing motions for summary judgment was the legal interpretation of Article 2.1(c)(i) of the APA. In construing a contract, we must ascertain and give effect to the parties' intentions as expressed within the four corners of the agreement. *URI, Inc. v. Kleberg Cnty*, 543 S.W.3d 755, 757 (Tex. 2018); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). The objective intent expressed by the words the parties used in the agreement controls over the parties' subjective intent. *URI*, 543 S.W.3d at 757. We "presume parties intend what the words their contract say and interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise." *Id*. at 764 (citation omitted). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Webster*, 128 S.W.3d at 229. Thus, we must "read contractual provisions so none of the terms of the agreement are rendered meaningless or superfluous." *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) (orig. proceeding). We "may not rewrite the parties' contract, nor should [we] add to its language." *Id*. "We cannot make new contracts between the parties and must enforce the contract as written." *Id*. "The language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent." *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

We "construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and need not embrace strained rules of interpretation [that] would avoid ambiguity at all costs." *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987). "Courts will avoid when possible and proper a construction [that] is unreasonable, inequitable, and oppressive." *Id*. If, after the pertinent rules of construction are applied, the contract "can be given a definite or certain legal meaning," it is unambiguous, and we construe it as a matter of law. *Webster*, 128 S.W.3d at 229. On the other hand, a contract is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.* "Furthermore, under general rules of construction, we avoid strictly construing [a contract's] language if it would lead to absurd results." *Kourosh Hemyari v. Stephens,* 355 S.W.3d 623, 626 (Tex. 2011) (per curiam).

*C. Analysis*

As noted, Article 2.1(c)(i) of the APA defines "Excluded Assets" as follows:

> (c)      Excluded Assets.  Notwithstanding anything herein to the contrary, the Purchased Assets shall not include (collectively, the "Excluded Assets"):
>
>    (i)      Bank Accounts.  Seller's bank accounts and cash, except for the Customer Deposits to the extent they have not been earned and offset against Seller's accounts receivable prior to the Closing Date;

KDHM's interpretation of "Excluded Assets" seeks to narrowly construe Article 2.1(c)(i) by separating it into two provisions: first categorizing the provision into an exclusion and then categorizing an exception to the exclusion. This interpretation takes a narrow, hyper-focused interpretation, and fails to harmonize and give effect to all the provisions of the APA with reference to the whole agreement. *See Webster*, 128 S.W.3d at 229. In considering Article 2.1(c)(i) in reference to the entire agreement, the plain language reflects that the parties anticipated customer deposits would not only be earned by KDHM before closing, but would also need to be accounted for before closing through the necessary accounting step of offsetting accounts receivable. In other

words, for KDHM's customer deposits to be considered excluded from the sale, KDHM had to account for its earned deposits prior to closing. To hold otherwise would lead to absurd results. Under KDHM's interpretation, the Seller could return months later (as was done in this case) and claim earned cash and deposits prior to the sale when there was nothing in the accounting books to show that the receivables had been offset. Thus, KDHM's interpretation leads to the absurd result of requiring the Buyer to open the accounting books and make an entry to offset accounts receivable several months after the sale of the business was completed and closed.

In considering the APA as a whole document and harmonizing all of its provisions so that none are rendered meaningless, we conclude that customer deposits qualify as "Excluded Assets" only if they have met both criteria (*i.e.*, earned and offset against Seller's accounts receivable before closing). This conclusion that customer deposits are not "Excluded Assets" unless they have been *both* earned and offset against KDHM's accounts receivable before closing is the only correct construction that gives effect to the written expression of the parties' intent. *See Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). First, we note that the use of the word "and" makes the conditions conjunctive. *See Bd. of Ins. Comm'rs v. Guardian Life Ins. Co.,* 142 Tex. 630, 635-36, 180 S.W.2d 906, 908-09 (1944) "The conjunctive 'and' expresses the general relation of connection or addition, especially combination . . . and signifies something to follow, expressing the idea that what follows is added and taken along with the first." *Cmty. Bank of Raymore v. Chesapeake Expl., LLC*, 416 S.W.3d 750, 757 (Tex. App.—El Paso 2013, no pet.) (quoting *Int'l Sec. Life Ins. Co. v. Arant,* 463 S.W.2d 523, 525-26 (Tex. Civ. App.—Amarillo 1971, writ ref'd n.r.e.)) (alteration in original).

Second, because the APA required accounting to be performed in accordance with Generally Accepted Accounting Principles ("GAAP"), and not a cash basis accounting method, it is apparent that other accounts besides cash are affected by offsetting accounts receivable. The

record reflects that Pamela Jane Davis, the bookkeeper for KDHM, testified at her deposition that in accordance with GAAP, the customer deposits were marked as a liability in QuickBooks until they were earned. *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 749 (Tex. 2020) (explaining that "evidence of surrounding circumstances may 'aid the understanding of an unambiguous contract's language,' 'inform the meaning' of the language actually used, and 'provide context that elucidates the meaning of the word employed'") (quoting *URI*, 543 S.W.3d at 757-59). However, the record is devoid of evidence that customers were properly or timely invoiced prior to closing or that accounts receivable had been offset to reflect same. Indeed, when asked if, as of the closing date, all the customer deposit accounts had been offset, Davis testified that "[f]rom what [she] could find, they had not."

Third, we note that several other provisions in the APA are affected by offsetting accounts receivable. Section 2.4 of the APA, titled "Purchase Price Adjustment," requires the Seller to not only provide accounts receivable information in accordance with GAAP but to also ensure that such information was updated and reconciled to adjust for accounts receivables and inventory shortfalls and excess. Section 2.4 also contains several provisions requiring updates as well as a determination of the actual "Final Closing Accounts Receivable and Inventory" included in the "Purchased Assets" and provides a process for the Seller to object and resolve any discrepancies which affect the purchase price. In addition, Section 2.1(b)(i) of the APA provides that included in "Purchased Assets" are not only all accounts receivable but also the right for the Buyer "to invoice and collect for sales and service to its customers." Section 2.1(b)(i) also includes references to specific accounts receivable "listed on Schedule 2.1(b)(i) of the Disclosure Schedules." In reviewing the APA as a whole document and the deposition testimony, it is apparent that KDHM failed to include the proper offset to accounts receivable prior to closing.

After considering the entire APA and harmonizing all the provisions of the APA by analyzing the provisions with reference to the whole agreement and the particular business activity, we conclude that Article 2.1(c)(i) of the APA is unambiguous and that the only logical and correct interpretation is that in order for the customer deposits to be excluded from the sale, KDHM would have had to both earned the customer deposits and offset accounts receivable prior to the closing date. In this case, it is undisputed that the customer deposits at issue were earned but accounts receivable were not offset in the books prior to closing. Thus, the customer deposits at issue were not excluded from the sale and were properly transferred to USIO at closing.

For these reasons, we hold the trial court erred in granting partial summary judgment in favor of KDHM on its "money had and received" claim. As the trial court erred in granting partial summary judgment in favor of KDHM, it also had no basis to grant KDHM's Supplemental Rule 248 motion or award attorneys' fees to KDHM. We therefore reverse the trial court's judgment.

Further, USIO has shown that the trial court erred in denying its motion for summary judgment and that it is entitled to summary judgment as a matter of law. *See Coastal Liquids*, 46 S.W.3d at 884 (explaining that when cross-motions for summary judgment are filed, an appellate court considers each motion and renders judgment the trial court should have reached). USIO moved for summary judgment on KDHM's "money had and received" claim, arguing that under the plain meaning of Article 2.1(c)(i), KDHM was not entitled to its claim as a matter of law. To prove a claim for "money had and received," KDHM had to show that USIO held money that "in equity and good conscience belongs to" KDHM. *See MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 814 (Tex. App.—Dallas 2012, no pet). As explained above, it is undisputed that the customer deposits at issue were not both earned and offset prior to the closing date. Thus, as a matter of law, the money held by USIO was its money and did not belong to KDHM, and the trial

court erred in failing to grant summary judgment in favor of USIO and render judgment that KDHM take nothing on its "money had and received" claim against USIO.

## CONCLUSION

We hold that under the unambiguous APA, the customer deposits only qualify as "Excluded Assets" if they meet both criteria of being (1) earned and (2) offset against KDHM's accounts receivable prior to the closing date. Because it is undisputed that the customer deposits at issue in this appeal were earned by KDHM but were not offset against accounts receivable prior to the closing date, they are not "Excluded Assets" within the meaning of Article 2.1(c)(i) of the APA and were properly transferred to USIO as part of the sale. Because we conclude the trial court erred in granting partial summary judgment in favor of KDHM, we reverse the trial court's judgment. Further, as USIO proved that it was entitled to judgment as a matter of law on KDHM's "money had and received" claim, we render judgment that KDHM take nothing against USIO on KDHM's "money had and received" claim. Finally, we remand the remaining claims to the trial court for further proceedings consistent with this opinion.

Adrian A. Spears II, Justice