**John BORDERS, Appellant,**

v.

**KRLB, INC., Appellee.**

**No. 07-85-0253-CV.**

Court of Appeals of Texas, Amarillo.

March 27, 1987.

Rehearing Denied April 30, 1987.

Phillip W. Gilbert, Dallas, for appellant.

Donald M. Hunt, Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This is a contract case. Appealing from a judgment awarding damages, interest and attorney's fees to appellee KRLB, Inc., appellant John Borders says the trial court erroneously ignored a jury finding and applied the wrong measure of damages. We affirm.

In January 1984, Borders contracted to purchase KRLB, a Lubbock radio station for $1,400,000.00. At that time, the station had an Arbitron[1] rating of 9.8. Shortly after the contract was signed, new Arbitron ratings were released and the rating of KRLB fell to 4.2, indicating that the station had lost over half its audience. When he learned about the ratings plunge, Borders notified KRLB that he would not abide by the contract, and demanded the return of $25,000.00 he had placed in escrow. KRLB refused to return the money and sued Borders for breach of contract. Borders responded with a counterclaim charging KRLB with breach.

The case was tried before a jury. Consistent with the jury's findings, the trial court entered judgment awarding KRLB $350,000.00 for damages caused by Borders' breach, plus interest and attorney's fees. In doing so, however, the trial court disregarded the jury's response to special issue number eleven:

### SPECIAL ISSUE NO. 11

Do you find from a preponderance of the evidence there were any material adverse changes in the business, operations, properties and other assets of KRLB which would impair the operation of radio station KRLB FM and KRLB

AM between November 3, 1983, and the date of repudiation by Borders?

ANSWER: "There were" or "There were not."

ANSWER: There were.

By his first four points, Borders says the foregoing finding entitled him to judgment because the finding was supported by the evidence and established an unfulfilled condition precedent to the closing of the sale. In order to resolve the points, we must determine at the outset, and as a question of law, whether a drop in Arbitron ratings was an event under the contract that would allow Borders to repudiate the contract. If it was not, then the trial court correctly ignored special issue eleven, because the evidence of the drop in Arbitron ratings is the only evidence that supports the finding. If it was, however, the finding mandated entry of judgment for Borders.

The special issue is based on paragraph 3.5 of the contract which says:

3.5. *Operations.* Since November 3, 1983, there have not been any material adverse changes in the business, operations, properties and other assets of KRLB which would impair the operation of radio station KRLB–FM and KRLB–AM and since such date the business of KRLB has been conducted in the usual, regular and ordinary manner and shall continue, through and including the Closing Date, to be conducted in such manner, unless prior written approval for any variation therefrom shall have first been secured from Borders. Since said date, KRLB has not, except as indicated on Schedule 7 attached hereto and incorporated herein by this reference, directly or indirectly:

(a) Made any loans or advances to any officer, director, shareholder or employee not exceeding $1,000 in the aggregate;

(b) Declared or paid any dividends on its capital stock or purchased or otherwise acquired any shares of its capital stock, other than those purchased from Ed Wilkes;

1. Arbitron is the primary market research company for radio stations. The ratings indicate the share of the listening market held by a station and are critical to the sale of advertising.

(c) Subjected any of the Purchased Assets to any mortgage, deed of trust, lien, pledge, conditional sales contract, lease, encumbrance or charge;

(d) Sold, leased or otherwise transferred any of the Purchased Assets other than in the ordinary course of business;

(e) Entered into any agreements, other than standard purchase orders for materials sold or purchased in the ordinary course of business either not in the ordinary course of business or involving consideration given by KRLB in amounts in excess of One Thousand Dollars ($1,000.00);

(f) Modified, amended or terminated any agreement, or waived or released any right, other than in the ordinary course of business;

(g) Incurred any obligation or liability for borrowed money, or incurred any other obligation or liability except in the ordinary course of business that constitute a lien on the Purchased Assets or which Borders will be obligated to assume;

(g) [sic] Increased the salary, fringe benefits or other compensation of, or paid any bonus or similar compensation to, any of its officers or directors; or

(h) Agreed to do any of the things described in the preceding clauses (a) through (i).

KRLB admits that section 3 of the contract establishes various conditions precedent and Borders admits that the contract does not specifically mention Arbitron ratings. Thus, in order to determine whether KRLB was required to maintain its Arbitron rating, we must construe the contract.

■ Our primary goal when construing an instrument is to give effect to the intent of the parties. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962). We ascertain that intent from the language of the contract, *R & P Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 519 (Tex.1980), as a matter of law and without resort to parol evidence unless the contract is ambiguous. *Caviness Packing Co., Inc. v. Corbett*, 587 S.W.2d 543, 546 (Tex.Civ.App.—Amarillo

1979, writ ref'd n.r.e.). Parenthetically, we observe that when, as here, neither party contends the instrument is ambiguous, its construction must be resolved as a question of law. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). In construing the instrument, we must consider and attempt to give effect to all of it, *Southland Royalty Co. v. Pan American Petro. Corp.*, 378 S.W.2d 50, 57 (Tex.1964), while mindful of the intentions existing when it was executed. *First Nat. Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 148 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). The ultimate restraint is that a court cannot, through the construction process, make a new contract for the parties, one they did not make. *Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 322 S.W.2d 597, 600 (1959).

■ When we apply those principles to the contract in question, we conclude that the drop in Arbitron ratings did not justify Borders' refusal to close the transaction. First, examining the entire contract, we find no mention of Arbitron ratings and no language guaranteeing or promising Borders that the station would maintain its audience share between November 8, 1983, and closing.

Second, all parties agree that if such an obligation is to be supplied by necessary implication, it must come from paragraph 3.5 quoted above. It is apparent, however, that paragraph 3.5 is designed to prohibit KRLB management from raiding the corporation or seriously damaging its ability to function as a business entity, by incurring debt, selling assets, or taking money, i.e., impairing its operation. The paragraph contemplates deliberate adverse action by management. We cannot reasonably construe the paragraph to include an event over which management has little control. Certainly there is nothing to indicate that KRLB aided, abetted, or encouraged the ratings decline.

We have examined the entire contract to determine whether KRLB agreed, either expressly or by implication, that the Arbitron ratings would not fall after November 3, 1983. We find no such agreement and to

supply one would be to make a new contract for the parties. It follows that the trial court correctly disregarded special issue number eleven because, within the context of this record, there was no evidence to support it.[2] Points of error one, two, three, and four are overruled.

By his final point, Borders says his liability is limited to $25,000.00 under a liquidated damages clause in the contract. Consistent with a requirement in the contract, Borders placed $25,000.00 in escrow pending the completion of the transaction. He now points to the final sentence of paragraph 2.6 as support for his attempt to limit his liability to that $25,000.00 deposit:

> If this Agreement fails to close for any reason other than KRLB's failure to perform or causes beyond the control of Borders except an inability to perform because of his failure to obtain any necessary financing other than the financing provided for in Section 5.3 hereof, the Escrowed Funds shall be paid to KRLB as liquidated damages.

Borders did not, however, plead the provision as a limitation on his liability.

■ Rule 94 of the Texas Rules of Civil Procedure requires a party, when pleading to a preceding pleading, to set forth affirmatively any "matter constituting an avoidance or affirmative defense." The affirmative pleading is necessary because a general denial is only a negative plea that places in issue the allegations a plaintiff is required to prove. The general denial "does not open the way for evidence to support propositions which do not negative the plaintiff's claim, but go to support some independent reason why the plaintiff is barred from recovering...." 2 R. McDonald, Texas Civil Practice in District and County Courts, § 7.23.2 (rev. 1982). *See, e.g., Walter E. Heller & Co. v. B.C. & M., Inc.,* 543 S.W.2d 696, 697 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.); *LoBue v. United Services Planning Association,* 467 S.W.2d 574, 576 (Tex.Civ.App.—Fort Worth 1971, writ dism'd). As a practical matter, the Rule is designed to encompass the situation where a plaintiff cannot recover even if his claims are true because of some other fact that the defendant has pled as a bar.

■ When the foregoing analysis is applied here, it is apparent that Borders' failure to plead the provision is fatal to his contention. He is, by the provision, attempting to avoid any liability for actual damages by contending that his liability is predetermined and limited. That is a classic avoidance defense. It conditionally admits the truth of KRLB's claim and says the station still cannot recover, beyond $25,000.00, because of the provision. Thus, Borders was required to plead the matter in order to rely on it. Because he did not do so, he cannot urge it here.

Point of error five is overruled.

The judgment is affirmed.

*Goulding,* 497 S.W.2d 944, 945 (Tex.1973), in disposing of Borders' evidentiary contentions.

---

2. We have, of course, applied the review standards of *Texas & N.O.R. Co. v. Burden,* 146 Tex. 109, 203 S.W.2d 522, 530 (1947), and *Traylor v.*