NO. 07-00-0569-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



OCTOBER 29, 2001


______________________________



MILLER DANIEL AND HUGH DANIEL
,




 Appellant


v.



MIKE BOX, 




 Appellee

_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 95-552,723; HON. SAM MEDINA, PRESIDING


_______________________________



Before BOYD, C.J., QUINN AND JOHNSON, J.J.

 Miller Daniel and Hugh Daniel (collectively referred to as the Daniels) appeal a
judgment entered awarding Mike Box (Box) $63,953.07. The two issues asserted on
appeal implicate the legal and factual sufficiency of the evidence underlying the jury's
answer to question one of the charge. Through that answer, the jury found that Box did
not "fail to comply with the terms of the agreement [in question] . . . by terminating his
employment at Western Truck Parts." We affirm the trial court's entry of judgment upon
that finding and the entire verdict.



Background

 The dispute arose from differing interpretations of an "Executory Contract for Sale
of Partnership Interest." Through the latter, the Daniels "grant[ed] to . . . [Box] the right to
purchase a one-third . . . interest in Western Truck Parts, a partnership, by payment of the
sum of Seventy-Five Thousand and No/100 - ($75,000) - Dollars, together with interest
at the rate of Seven and One-Half . . . per cent [sic] per annum until fully paid." They also
agreed that Box "shall receive credit on said payment out of Five . . . per cent [sic] of the
gross sales of Western Truck Parts" and that they "grant[ed] to [Box] the right to
accumulate five . . . per cent [sic] of the gross sales for the purchase[] of said one-third 
. . . partnership interest in return for [Box's] best efforts, knowledge and work in making the
business grow and profit." Additionally, once Box had "accumulated Seventy-Five
Thousand and no/100 . . . Dollars credit plus accumulated interest . . . a partnership
agreement [was to] be executed granting to . . . Box, Hugh Daniel, and Miller Daniel each
a one-third . . . interest in Western Truck Parts," the contract stated. 

 Also included within the contract were provisions addressing the termination of the
agreement and distribution of the assets upon termination. That is, the parties agreed that
the Executory Contract would "terminate upon the willful misconduct of [Box]," which
conduct was "defined as . . . 1. Embezzlement; 2. Theft; [and] 3. Operation of the business
contrary to the criminal laws of the State of Texas." So too would it end "upon the sale of
the business, the death, determination of incompetence or filing of bankruptcy, by any one
of the parties to [the] agreement." And, should the accord terminate because of willful
misconduct, it was agreed that "any interest or credit accumulated" by Box would be
forfeited. However, if it were to end for reasons "other than willful misconduct," Box would
"receive his pro rata share of accumulated credit out of the proceeds of the sale or
liquidation of the business." 

 Even though employed by Western Truck at the time the agreement was executed,
Box, subsequently, left Western Truck's employment several years thereafter. At the time
of his departure, he had accumulated a "credit" as contemplated by the agreement. But,
the credit did not equal the $75,000 purchase price for a one-third interest in the business. 
Moreover, the Daniels subsequently sold the business, and Box demanded payment of his
pro rata share of the proceeds. The Daniels refused payment, contending that he had
breached the agreement by leaving their employ before accumulating the $75,000 credit. 
And, because Box allegedly breached the contract first, they contended that they were
relieved from having to pay him anything. 

 A lawsuit ensued, and the jury was asked, via question one of the jury charge, to
determine whether Box "fail[ed] to comply with the terms of the agreement [in question] 
. . . by terminating his employment at Western Truck Parts." (1) And, it is the jury's negative
answer to that question which the Daniels contest on appeal.

Discussion


 Whether or not the jury's answer to question one enjoys the support of legally and
factually sufficient evidence depends upon the rights and obligations imposed by the
contract. Simply put, the Daniels contend that the agreement obligated Box to remain in
the employ of Western Truck. Because he did not, Box purportedly breached the
agreement which, in turn, relieved the Daniels of having to pay Box anything. To
determine whether the Daniels are correct, we must construe the accord to see if it
required Box to remain in the employ of Western Trucking.

 Before proceeding to construe the agreement, however, we briefly review the rules
guiding our interpretation of the contract. The first mandates that construing an
unambiguous contract involves a question of law. Borders v. KRLB, Inc., 727 S.W.2d 357,
359 (Tex. App.--Amarillo 1987, writ ref'd n.r.e.). Thus, we need not defer to any
interpretation afforded by the trial court. Secondly, when interpreting an instrument, we
strive to give effect to its parties' intent. Id. Furthermore, that intent is garnered from the
language of the contract, which language is considered in its entirety. Id. That is, we
peruse the complete document to understand, harmonize, and effectuate all its provisions. 
Questa Energy Corp. v. Vantage Point Energy, Inc., 887 S.W.2d 217, 221 (Tex. App.--Amarillo 1994, writ denied). So too must we afford the words contained in the agreement
their plain, ordinary, and generally accepted meaning, unless the instrument requires
otherwise. Sun Operating, Ltd. v. Holt, 984 S.W.2d 277, 285 (Tex. App.--Amarillo 1998,
no pet.); Phillips Petroleum Co. v. Gillman, 593 S.W.2d 152, 154 (Tex. Civ. App.--Amarillo
1980, writ ref'd. n.r.e.). 

 Finally, in applying the foregoing rules of construction, we may not rewrite the
agreement to mean something it did not say. Borders v. KRLB, Inc., 727 S.W.2d at 359. 
Simply put, we cannot change the contract merely because we or one of the parties comes
to dislike its provisions or think that something else is needed in it. HECI Explor. Co. v.
Neel, 982 S.W.2d 881, 888-89 (Tex. 1998). This is so because parties to the contract are
considered masters of their own choices. They are entitled to select what terms and
provisions to include in the agreement before executing it. And, in so choosing, each is
entitled to rely upon the words selected to demarcate their respective obligations and
rights. In short, the parties strike the deal they choose to strike and, thus, voluntarily bind
themselves in the manner they choose. Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d
24, 26-27 (Tex. App.-Amarillo 2000, no pet.). And, that is why parties are bound by their
agreement as written. Emmer v. Phillips Petroleum Co., 668 S.W.2d 487, 490 (Tex. App.--Amarillo 1984, no writ). For a court to change the agreement merely because it did not like
same, or because one of the parties subsequently found it distasteful, would be to
undermine not only the sanctity afforded the contract but also the expectations of those
who created and relied upon it. With this said, we now turn to the accord at bar.

 Under the agreement, the Daniels "grant[ed]" Box the right to acquire one-third of
the business in exchange for "payment of . . . $75,000" plus interest until the $75,000 was
paid. (Emphasis added). Nothing in that "grant" expressly conditioned his acquisition of
the interest upon his continued employment with the business. (2) And, to the extent that
reference was made to his utilization of his "best efforts, knowledge and work in making
the business grow and profit," the words were used in the context of his earning credit
towards the $75,000 payment of the acquisition price. In other words, the Daniels agreed
to "grant" him a credit of 5% of the gross sales per year against the $75,000 purchase price
as long as he used his best efforts, knowledge and work to make the business grow and
profit. Simply put, if he did not use his best efforts to further the business, he would not
earn the 5% credit.

 Furthermore, the parties mentioned only one way in which Box could forfeit his
interest or credit accumulated in the business, and it involved the commission of "willful
misconduct." And, as defined by the parties themselves, that phrase encompassed
embezzlement, theft, and the "operation of the business contrary to the criminal laws of"
Texas. Nothing was said about simply leaving the employ of the company. 

 Moreover, in addressing the various ways in which the agreement would terminate,
the parties again omitted reference to Box's mere departure from the employ of Western
Truck. Rather, they stated that the contract would terminate upon his commission of "willful
misconduct" (as defined in the contract), the sale of the business, and "the death,
determination of incompetence or filing of bankruptcy" by any of the parties. And, unless
the agreement was terminated because of his willful misconduct, the parties also agree
that he would receive his pro rata share of the accumulated credit out of the proceeds from
any sale of the business. 

 Stating in the contract that 1) Box could buy his interest in exchange for $75,000,
2) he could gain credit against the $75,000 purchase price by using his best effort to further
the business, 3) he would forfeit his interest solely by committing willful misconduct as
defined in the contract, and 4) he would receive his pro rata share of the business once
sold unless the agreement was terminated because of his willful misconduct, while saying
nothing about his supposed need to work at Western Truck, does not reasonably evince
an intent to require him to work at the company in order to buy his interest in the business. 
Nor does it reasonably evince an intent to require him to work at the company in order to
receive his pro rata share of the sale of the company. Thus, we cannot read such an
obligation into the accord. 

 In short, the parties structured the rights and obligations of those involved through
the words they selected. Having selected them, they are bound by them. We cannot
change or add to them. And, because the words they selected imposed no obligation on
Box to work at Western Truck to reap the benefits of the agreement, the jury's finding that
Box did not fail to comply with the contract by terminating his employment with Western
Truck is not legally nor factually insufficient. 

 Accordingly, we affirm the judgment entered below.


 Brian Quinn

 Justice



Do Not Publish.


 
1. The jury was not asked to decide if the Daniels breached the agreement by failing to pay Box his
supposed pro rata share. Instead they were simply asked to determine what sum of money would reasonably
compensate Box for his damages. 
2. Nor can we say that such a condition was necessarily implied because one need not be an employee
of a partnership to own an interest in the partnership.