NO. 07-00-0569-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 29, 2001
_____

MILLER DANIEL AND HUGH DANIEL,

Appellant

v.

MIKE BOX,

Appellee
_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 95-552,723; HON. SAM MEDINA, PRESIDING
_____

Before BOYD, C.J., QUINN AND JOHNSON, J.J.

Miller Daniel and Hugh Daniel (collectively referred to as the Daniels) appeal a judgment entered awarding Mike Box (Box) $63,953.07. The two issues asserted on appeal implicate the legal and factual sufficiency of the evidence underlying the jury's answer to question one of the charge. Through that answer, the jury found that Box did not "fail to comply with the terms of the agreement [in question] . . . by terminating his employment at Western Truck Parts." We affirm the trial court's entry of judgment upon that finding and the entire verdict.

### Background

The dispute arose from differing interpretations of an "Executory Contract for Sale of Partnership Interest." Through the latter, the Daniels "grant[ed] to . . . [Box] the right to purchase a one-third . . . interest in Western Truck Parts, a partnership, by payment of the sum of Seventy-Five Thousand and No/100 – ($75,000) – Dollars, together with interest at the rate of Seven and One-Half . . . per cent [sic] per annum until fully paid." They also agreed that Box "shall receive credit on said payment out of Five . . . per cent [sic] of the gross sales of Western Truck Parts" and that they "grant[ed] to [Box] the right to accumulate five . . . per cent [sic] of the gross sales for the purchase[] of said one-third . . . partnership interest in return for [Box's] best efforts, knowledge and work in making the business grow and profit." Additionally, once Box had "accumulated Seventy-Five Thousand and no/100 . . . Dollars credit plus accumulated interest . . . a partnership agreement [was to] be executed granting to . . . Box, Hugh Daniel, and Miller Daniel each a one-third . . . interest in Western Truck Parts," the contract stated.

Also included within the contract were provisions addressing the termination of the agreement and distribution of the assets upon termination. That is, the parties agreed that the Executory Contract would "terminate upon the willful misconduct of [Box]," which conduct was "defined as . . . 1. Embezzlement; 2. Theft; [and] 3. Operation of the business contrary to the criminal laws of the State of Texas." So too would it end "upon the sale of the business, the death, determination of incompetence or filing of bankruptcy, by any one of the parties to [the] agreement." And, should the accord terminate because of willful misconduct, it was agreed that "any interest or credit accumulated" by Box would be

2

forfeited. However, if it were to end for reasons "other than willful misconduct," Box would "receive his pro rata share of accumulated credit out of the proceeds of the sale or liquidation of the business."

Even though employed by Western Truck at the time the agreement was executed, Box, subsequently, left Western Truck's employment several years thereafter. At the time of his departure, he had accumulated a "credit" as contemplated by the agreement. But, the credit did not equal the $75,000 purchase price for a one-third interest in the business. Moreover, the Daniels subsequently sold the business, and Box demanded payment of his pro rata share of the proceeds. The Daniels refused payment, contending that he had breached the agreement by leaving their employ before accumulating the $75,000 credit. And, because Box allegedly breached the contract first, they contended that they were relieved from having to pay him anything.

A lawsuit ensued, and the jury was asked, via question one of the jury charge, to determine whether Box "fail[ed] to comply with the terms of the agreement [in question] . . . by terminating his employment at Western Truck Parts."[1] And, it is the jury's negative answer to that question which the Daniels contest on appeal.

### Discussion

Whether or not the jury's answer to question one enjoys the support of legally and factually sufficient evidence depends upon the rights and obligations imposed by the contract. Simply put, the Daniels contend that the agreement obligated Box to remain in

---

[1]The jury was not asked to decide if the Daniels breached the agreement by failing to pay Box his supposed pro rata share. Instead they were simply asked to determine what sum of money would reasonably compensate Box for his damages.

the employ of Western Truck. Because he did not, Box purportedly breached the agreement which, in turn, relieved the Daniels of having to pay Box anything. To determine whether the Daniels are correct, we must construe the accord to see if it required Box to remain in the employ of Western Trucking.

Before proceeding to construe the agreement, however, we briefly review the rules guiding our interpretation of the contract. The first mandates that construing an unambiguous contract involves a question of law. *Borders v. KRLB, Inc.*, 727 S.W.2d 357, 359 (Tex. App.--Amarillo 1987, writ ref'd n.r.e.). Thus, we need not defer to any interpretation afforded by the trial court. Secondly, when interpreting an instrument, we strive to give effect to its parties' intent. *Id.* Furthermore, that intent is garnered from the language of the contract, which language is considered in its entirety. *Id.* That is, we peruse the complete document to understand, harmonize, and effectuate all its provisions. *Questa Energy Corp. v. Vantage Point Energy, Inc.*, 887 S.W.2d 217, 221 (Tex. App.-- Amarillo 1994, writ denied). So too must we afford the words contained in the agreement their plain, ordinary, and generally accepted meaning, unless the instrument requires otherwise. *Sun Operating, Ltd. v. Holt*, 984 S.W.2d 277, 285 (Tex. App.--Amarillo 1998, no pet.); *Phillips Petroleum Co. v. Gillman*, 593 S.W.2d 152, 154 (Tex. Civ. App.--Amarillo 1980, writ ref'd. n.r.e.).

Finally, in applying the foregoing rules of construction, we may not rewrite the agreement to mean something it did not say. *Borders v. KRLB, Inc.*, 727 S.W.2d at 359. Simply put, we cannot change the contract merely because we or one of the parties comes to dislike its provisions or think that something else is needed in it. *HECI Explor. Co. v.*

4

*Neel*, 982 S.W.2d 881, 888-89 (Tex. 1998). This is so because parties to the contract are considered masters of their own choices. They are entitled to select what terms and provisions to include in the agreement before executing it. And, in so choosing, each is entitled to rely upon the words selected to demarcate their respective obligations and rights. In short, the parties strike the deal *they* choose to strike and, thus, voluntarily bind themselves in the manner *they* choose. *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26-27 (Tex. App.–Amarillo 2000, no pet.). And, that is why parties are bound by their agreement as written. *Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487, 490 (Tex. App.--Amarillo 1984, no writ). For a court to change the agreement merely because it did not like same, or because one of the parties subsequently found it distasteful, would be to undermine not only the sanctity afforded the contract but also the expectations of those who created and relied upon it. With this said, we now turn to the accord at bar.

Under the agreement, the Daniels "grant[ed]" Box the right to acquire one-third of the business in exchange for "*payment of* . . . $75,000" plus interest until the $75,000 was paid. (Emphasis added). Nothing in that "grant" expressly conditioned his acquisition of the interest upon his continued employment with the business.[2] And, to the extent that reference was made to his utilization of his "best efforts, knowledge and work in making the business grow and profit," the words were used in the context of his earning credit towards the $75,000 payment of the acquisition price. In other words, the Daniels agreed to "grant" him a credit of 5% of the gross sales per year against the $75,000 purchase price as long as he used his best efforts, knowledge and work to make the business grow and

---

[2]Nor can we say that such a condition was necessarily implied because one need not be an employee of a partnership to own an interest in the partnership.

5

profit. Simply put, if he did not use his best efforts to further the business, he would not earn the 5% credit.

Furthermore, the parties mentioned only one way in which Box could forfeit his interest or credit accumulated in the business, and it involved the commission of "willful misconduct." And, as defined by the parties themselves, that phrase encompassed embezzlement, theft, and the "operation of the business contrary to the criminal laws of" Texas. Nothing was said about simply leaving the employ of the company.

Moreover, in addressing the various ways in which the agreement would terminate, the parties again omitted reference to Box's mere departure from the employ of Western Truck. Rather, they stated that the contract would terminate upon his commission of "willful misconduct" (as defined in the contract), the sale of the business, and "the death, determination of incompetence or filing of bankruptcy" by any of the parties. And, unless the agreement was terminated because of his willful misconduct, the parties also agree that he would receive his pro rata share of the accumulated credit out of the proceeds from any sale of the business.

Stating in the contract that 1) Box could buy his interest in exchange for $75,000, 2) he could gain credit against the $75,000 purchase price by using his best effort to further the business, 3) he would forfeit his interest solely by committing willful misconduct as defined in the contract, and 4) he would receive his pro rata share of the business once sold unless the agreement was terminated because of his willful misconduct, while saying nothing about his supposed need to work at Western Truck, does not reasonably evince an intent to require him to work at the company in order to buy his interest in the business. Nor does it reasonably evince an intent to require him to work at the company in order to

6

receive his pro rata share of the sale of the company. Thus, we cannot read such an obligation into the accord.

In short, the parties structured the rights and obligations of those involved through the words they selected. Having selected them, they are bound by them. We cannot change or add to them. And, because the words they selected imposed no obligation on Box to work at Western Truck to reap the benefits of the agreement, the jury's finding that Box did not fail to comply with the contract by terminating his employment with Western Truck is not legally nor factually insufficient.

Accordingly, we affirm the judgment entered below.


Brian Quinn
Justice


Do Not Publish.

7