NO. 07-01-0505-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 29, 2002


______________________________



JOYCE C. AND LOUIE J. CORDOVA
,




 Appellants


v.



JOEL C. OSBORN, M.D., 




 Appellee

_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 89,189-A; HON. DAVID L. GLEASON, PRESIDING


_______________________________





ON MOTION FOR REHEARING


_______________________________



Before QUINN and JOHNSON, JJ., and BOYD, SJ. (1)

 Pending before the court is the motion of Joyce C. and Louie J. Cordova for
rehearing. Through the motion, they request that, instead of dismissing the appeal for
want of jurisdiction, we "simply abate the appeal and remand the cause to the trial court,
allowing enough time for the signing of a new judgment, the preparation and filing of a new
motion for new trial, and the conducting of a hearing on such motion for new trial." We
overrule the motion.

 As support for the relief requested, the Cordovas cite to Disco Machine of Liberal
Co. v. Payton, 900 S.W.2d 71 (Tex. App.-Amarillo 1995, no writ). There, like here, the
appellants attempted to appeal from an order simply granting a motion for summary
judgment. We concluded there that the record before us failed to illustrate that a final,
appealable judgment had been entered. However, instead of dismissing the cause, we
abated and remanded it to the trial court "to supplement the record to show whether or not
a final judgment was rendered." Id. at 74. If such a judgment had been rendered, then the
trial court was to reduce same to writing, date it as of the date of rendition, and forward it
to us. Id. On the other hand, if judgment had not been rendered, the trial court was to
inform us of that and forego rendering one. In choosing this course, we merely attempted
to obtain an accurate and complete record of what occurred below. Id. at 74. So too did
we caution the litigants against creating a new record as evinced by our statement that "if
judgment was never rendered the parties cannot cause it to now be rendered and included
within the supplement." Id. at 75. 

 Here, however, the Cordovas do not argue that the trial court actually entered a final
judgment or somehow rendered one but failed to reduce it to writing. Rather, they want
an opportunity to 1) obtain a "new judgment," 2) file a "new motion for new trial," and 3)
receive a hearing on their new motion for new trial. That is nothing short of attempting to
create a new record and continue the trial court proceeding. Those are acts which we
expressly refused to condone in Disco Machine. 

 Moreover, we have before us a transcript of the hearing from which this appeal
emanated. Therein, the trial court simply granted Dr. Joel C. Osborn's motion for summary
judgment, queried about a severance, and "presume[d] then that [the Cordovas] will take
whatever steps . . . consider[ed] necessary." Nothing was said about entering a final
judgment or declaring a decision of the law upon the matters at issue. Given this, the
record shows that the court did not purport to render a final judgment. So, there existed
no need for a remand to develop that subject or reduce to writing that which did not
happen. In short, Disco Machine would require dismissal.


 Per Curiam


Do not publish. 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2002). 



ONG>


 Whether or not the jury's answer to question one enjoys the support of legally and
factually sufficient evidence depends upon the rights and obligations imposed by the
contract. Simply put, the Daniels contend that the agreement obligated Box to remain in
the employ of Western Truck. Because he did not, Box purportedly breached the
agreement which, in turn, relieved the Daniels of having to pay Box anything. To
determine whether the Daniels are correct, we must construe the accord to see if it
required Box to remain in the employ of Western Trucking.

 Before proceeding to construe the agreement, however, we briefly review the rules
guiding our interpretation of the contract. The first mandates that construing an
unambiguous contract involves a question of law. Borders v. KRLB, Inc., 727 S.W.2d 357,
359 (Tex. App.--Amarillo 1987, writ ref'd n.r.e.). Thus, we need not defer to any
interpretation afforded by the trial court. Secondly, when interpreting an instrument, we
strive to give effect to its parties' intent. Id. Furthermore, that intent is garnered from the
language of the contract, which language is considered in its entirety. Id. That is, we
peruse the complete document to understand, harmonize, and effectuate all its provisions. 
Questa Energy Corp. v. Vantage Point Energy, Inc., 887 S.W.2d 217, 221 (Tex. App.--Amarillo 1994, writ denied). So too must we afford the words contained in the agreement
their plain, ordinary, and generally accepted meaning, unless the instrument requires
otherwise. Sun Operating, Ltd. v. Holt, 984 S.W.2d 277, 285 (Tex. App.--Amarillo 1998,
no pet.); Phillips Petroleum Co. v. Gillman, 593 S.W.2d 152, 154 (Tex. Civ. App.--Amarillo
1980, writ ref'd. n.r.e.). 

 Finally, in applying the foregoing rules of construction, we may not rewrite the
agreement to mean something it did not say. Borders v. KRLB, Inc., 727 S.W.2d at 359. 
Simply put, we cannot change the contract merely because we or one of the parties comes
to dislike its provisions or think that something else is needed in it. HECI Explor. Co. v.
Neel, 982 S.W.2d 881, 888-89 (Tex. 1998). This is so because parties to the contract are
considered masters of their own choices. They are entitled to select what terms and
provisions to include in the agreement before executing it. And, in so choosing, each is
entitled to rely upon the words selected to demarcate their respective obligations and
rights. In short, the parties strike the deal they choose to strike and, thus, voluntarily bind
themselves in the manner they choose. Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d
24, 26-27 (Tex. App.-Amarillo 2000, no pet.). And, that is why parties are bound by their
agreement as written. Emmer v. Phillips Petroleum Co., 668 S.W.2d 487, 490 (Tex. App.--Amarillo 1984, no writ). For a court to change the agreement merely because it did not like
same, or because one of the parties subsequently found it distasteful, would be to
undermine not only the sanctity afforded the contract but also the expectations of those
who created and relied upon it. With this said, we now turn to the accord at bar.

 Under the agreement, the Daniels "grant[ed]" Box the right to acquire one-third of
the business in exchange for "payment of . . . $75,000" plus interest until the $75,000 was
paid. (Emphasis added). Nothing in that "grant" expressly conditioned his acquisition of
the interest upon his continued employment with the business. (2) And, to the extent that
reference was made to his utilization of his "best efforts, knowledge and work in making
the business grow and profit," the words were used in the context of his earning credit
towards the $75,000 payment of the acquisition price. In other words, the Daniels agreed
to "grant" him a credit of 5% of the gross sales per year against the $75,000 purchase price
as long as he used his best efforts, knowledge and work to make the business grow and
profit. Simply put, if he did not use his best efforts to further the business, he would not
earn the 5% credit.

 Furthermore, the parties mentioned only one way in which Box could forfeit his
interest or credit accumulated in the business, and it involved the commission of "willful
misconduct." And, as defined by the parties themselves, that phrase encompassed
embezzlement, theft, and the "operation of the business contrary to the criminal laws of"
Texas. Nothing was said about simply leaving the employ of the company. 

 Moreover, in addressing the various ways in which the agreement would terminate,
the parties again omitted reference to Box's mere departure from the employ of Western
Truck. Rather, they stated that the contract would terminate upon his commission of "willful
misconduct" (as defined in the contract), the sale of the business, and "the death,
determination of incompetence or filing of bankruptcy" by any of the parties. And, unless
the agreement was terminated because of his willful misconduct, the parties also agree
that he would receive his pro rata share of the accumulated credit out of the proceeds from
any sale of the business. 

 Stating in the contract that 1) Box could buy his interest in exchange for $75,000,
2) he could gain credit against the $75,000 purchase price by using his best effort to further
the business, 3) he would forfeit his interest solely by committing willful misconduct as
defined in the contract, and 4) he would receive his pro rata share of the business once
sold unless the agreement was terminated because of his willful misconduct, while saying
nothing about his supposed need to work at Western Truck, does not reasonably evince
an intent to require him to work at the company in order to buy his interest in the business. 
Nor does it reasonably evince an intent to require him to work at the company in order to
receive his pro rata share of the sale of the company. Thus, we cannot read such an
obligation into the accord. 

 In short, the parties structured the rights and obligations of those involved through
the words they selected. Having selected them, they are bound by them. We cannot
change or add to them. And, because the words they selected imposed no obligation on
Box to work at Western Truck to reap the benefits of the agreement, the jury's finding that
Box did not fail to comply with the contract by terminating his employment with Western
Truck is not legally nor factually insufficient. 

 Accordingly, we affirm the judgment entered below.


 Brian Quinn

 Justice



Do Not Publish.


 
1. The jury was not asked to decide if the Daniels breached the agreement by failing to pay Box his
supposed pro rata share. Instead they were simply asked to determine what sum of money would reasonably
compensate Box for his damages. 
2. Nor can we say that such a condition was necessarily implied because one need not be an employee
of a partnership to own an interest in the partnership.