NO. 07-05-0363-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 23, 2007

_____

CHAIN-C, INC., A TEXAS CORPORATION; HERRING NATIONAL BANK
and JANE SLEMP BURGESS, CO-TRUSTEES OF THE CORNELIA JOHNSON
SLEMP TRUST; and MONARCH TRUST COMPANY, TRUSTEE OF THE
JESSIE HERRING JOHNSON ESTATE TRUST NO. 1,

Appellants

v.

SEABOARD FARMS, INC.,

Appellee

_____

FROM THE 69TH DISTRICT COURT OF HARTLEY COUNTY;

NO. 4184-H; HON. RONALD E. ENNS, PRESIDING
_____

Before QUINN, C.J., HANCOCK, J., and BOYD, SJ.[1]


MEMORANDUM OPINION


In this appeal, appellants Chain-C, Inc., a Texas corporation; Herring National Bank

and Jane Slemp Burgess, Co-trustees of the Cornelia Johnson Slemp Trust, and the

Monarch Trust Company, trustee of the Jessie Herring Johnson Trust No. 1, (herein

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2006).

collectively referred to as Chain-C) challenge a take-nothing summary judgment in favor of Seaboard Farms, Inc. (herein Seaboard), in which Seaboard was also awarded attorney fees. In presenting its challenge, Chain-C argues the judgment was improper because 1) the contract giving rise to the underlying proceeding was not a real estate option but was a purchase contract; 2) conditions were not met for the contract's liquidated damages provision to be applicable; and 3) the trial court failed to "recognize specific performance as an appropriate remedy." Additionally, Chain-C contends the trial court erred by awarding Seaboard attorney fees. Disagreeing with Chain-C's challenge, we affirm the judgment of the trial court.

## Background

On March 25, 2002, Chain-C, as seller, and Seaboard, as buyer, executed the document giving rise to the controversy underlying this proceeding. The instrument is styled as an "Escrow Contract for Purchase of Real Property" and covered the surface estate and water rights in and to Sections 375 and 376 in Block 44 of the H & TX Survey in Hartley County. The contract became effective on March 25, 2002, at which time it was executed by Seaboard and at which time it deposited with the escrow agent the sum of $25,000. By contractual provision, Seaboard had a one hundred and thirty day "investigation period" from March 25, 2002, with an additional twenty days thereafter within which to close on the purchase. Thus, the initial closing date was August 22, 2002. In the event the deal was not closed within the one hundred fifty day period, the contract provided that Seaboard could instruct the escrow agent to forward the $25,000 escrow deposit to Chain-C and extend the closing date to November 1, 2003. By letter dated August 12, 2002, Seaboard instructed the escrow agent to pay the $25,000 to Chain-C with the

comment that "at this time, Buyer is continuing its efforts with diligence to effectuate closing of the agreement." Additionally, by letter dated September 15, 2003, Seaboard advised Chain-C that by copy of the letter it was advising the Escrow Agent "to schedule a pre-closing (at which time the final of all documents will be deposit [sic] with the Escrow Agent) for October 20, 2003, and the closing (at which time the funds and documents will be exchanged) for October 30, 2003 or as soon thereafter as is feasible and convenient for the Escrow Agent and the Seller." However, Seaboard did not elect to close the deal, and, on November 26, 2003, notified Chain-C of its decision not to complete the deal which, it contends, it was entitled to do pursuant to section 12(a)(ii) of the contract. In this letter, it affirmed that the $25,000 escrow payment should be paid to Chain-C. As is evident, Chain-C did not agree with this interpretation, and filed suit seeking specific performance of the deal and damages. Both sides filed motions for summary judgment, and, as we noted above, the trial court granted Seaboard's motion.

**Relevant contractual provisions**

1. **CONSIDERATION:** The parties agree that the total purchase price for the property shall be Nine Hundred Sixty Thousand Dollars ($960,000.00) for approximately 1,280 acres (the "Purchase Price").

Upon execution of this Agreement, Buyer shall deposit with the Escrow Agent the sum of Twenty Five Thousand and 00/100 dollars ($25,000.00) (the "Escrow Payment"). If this agreement is not terminated pursuant to Section 12a hereto and the Agreement has not closed 150 days from the Effective Date of this Agreement, the Escrow Agent shall be instructed by Buyer to pay all (100%) of the Escrow Payment to the Seller as consideration

3

for an option to close on the purchase of the Property no later than November 1, 2003 (the "Option Payment"). If the Option Payment is disbursed to Seller and this Agreement is not terminated by Buyer pursuant to Section 12, then the Purchase Price due at closing shall be reduced by the Option Payment.

12. **CANCELLATION AND BREACH:**

a. **Cancellation of this Agreement:** This Agreement shall be terminated upon the occurrence of any of the following:

i. If Buyer has not notified Seller in writing within twenty (20) calendar days after the Investigation Period [130 days after the execution of the contract] expires that all the conditions in Section 2 hereof have been satisfied or Buyer has waived such conditions;

ii. If following twenty (20) calender days after the Investigation Period [130 days after the execution of the contract] expires, Buyer at anytime notifies Seller in writing of its termination of the Agreement; or

iii. If Buyer gives written notice of termination to Seller on account of Seller's failure to observe any material obligation of this Agreement.

b. **Effect of Cancellation or Breach**: If this Agreement terminates, Seller's deed and Power of Attorney shall be returned to Seller and:

i. If this Agreement is terminated pursuant to Section 12 a i then no party shall have any liability to the other party hereunder, this Agreement shall terminate, and Escrow Agent shall return the Escrow Payment to Buyer and neither Seller or Buyer shall have any further obligation to the other hereunder.

ii. If terminated pursuant to Section 12 a ii, this Agreement shall terminate and the Option Payment disbursed to Seller shall remain the property of the Seller and neither Seller nor Buyer shall have any further obligation to the other hereunder.

iii. If terminated pursuant to Section 12 a iii, Buyer may terminate this Agreement and shall have such rights and remedies as shall be allowed by law and in equity.

iv. In the event of any litigation arising out of this Agreement, the prevailing parties shall be entitled to recover its costs and reasonable attorney's fees.

As we have noted, the trial court granted Seaboard's summary judgment and denied Chain-C's motion. Hence, this appeal.

### Standard of Review

The standards by which orders granting summary judgment are reviewed are, by now, axiomatic and we refer the parties to the seminal decision of *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1997). Those standards require that the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law, that in deciding whether there is a disputed material fact issue evidence favorable to the non-movant will be taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id*.

Although their implementation is sometimes difficult, the rules governing the construction of a contract are well established. Where, as here, neither party contends the contract is ambiguous, its construction must be resolved as a matter of law. *Borders v. KRLB, Inc.,* 727 S.W.2d 357, 359 (Tex. App.–Amarillo 1987, writ ref'd n.r.e.). Our primary

5

concern is to ascertain the true intent of the parties as expressed in the contract. *Id*. To achieve that objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract. *Questa Energy Corp. v. Vantage Point Energy, Inc.*, 887 S.W.2d 217, 221 (Tex. App.–Amarillo 1994, writ denied). In conducting our examination, we accord the words used in the contract their plain, ordinary, and generally accepted meaning, unless the instrument provides otherwise. *Sun Operating, Ltd. v. Holt,* 984 S.W.2d 277, 285 (Tex. App.–Amarillo 1998, pet. denied); *Phillips Petroleum Co. v. Gillman,* 593 S.W.2d 152, 154 (Tex. Civ. App.–Amarillo 1980, writ ref'd n.r.e.).

In applying the foregoing rules we may not rewrite the contract to mean something it did not mean. *Borders*, 727 S.W.2d at 359. The parties to a contract are considered as masters of their own choices and are entitled to select what terms and provisions to include in a contract, and they are entitled to rely upon the words selected to demarcate their respective obligations and rights. In sum, the parties strike the deal they choose to strike, and, in doing so, they are bound by the agreement as written. *Emmer v. Phillips Petroleum Co.,* 668 S.W.2d 487, 490 (Tex. App.–Amarillo 1984, no writ).

**Analysis**

Chain-C argues that the contract at issue was "both an option contract and a contract for sale of land." Specifically, it reasons that the option contained in the contract was for an extension of time within which to close the deal, the $25,000 was a separate payment for the extension of time within which to close the deal to no later than November 1, 2003, and Seaboard as the Buyer, "no longer had an unbridled right to terminate the

6

contract '*at any time*' but could do so only prior to the closing date which it specified."
(Emphasis in original). It concludes that because it satisfied all conditions of the contract
and was ready, willing, and able to conclude the contract on or before November 1, 2003,
and Seaboard had not exercised its section 12(a)(ii) right to terminate by that time,
Seaboard had materially breached the contract and the trial court erred in concluding
otherwise.

The primary test for determining whether a real estate agreement is an option
contract or a sale contract is whether the contract imposes a mandatory obligation upon
the seller to accept a sum stipulated as liquidated damages in lieu of the purchaser's
further liability. *Cadle Co. v. Harvey*, 46 S.W.3d 282, 286 (Tex. App.–Fort Worth 2001, pet.
denied); *Gala Homes, Inc. v. Fritz*, 393 S.W.2d 409, 411 (Tex. Civ. App.–Waco 1965, writ
ref'd n.r.e.); *see also Seelbach v. Clubb*, 7 S.W.3d 749, 756 (Tex. App.–Texarkana 1999,
pet. denied) (when seller's only contractual remedy is retention of the earnest money, the
agreement is an option). In the absence of such a provision, it is a sale contract. *Cadle
Co.*, 46 S.W.3d at 286; *cf. Paramount Fire Ins. Co. v. Aetna Casualty & Surety Co.*,163
Tex. 250, 353 S.W.2d 841, 843 (1962).

Under the instant contract, Seaboard was only obligated to instruct the escrow agent
to deliver the $25,000 in order to extend its option to purchase until November 1, 2003.
As we have noted, paragraph 12(a)(ii) specifically provided that "at any time" after the
investigation period, Seaboard could notify Chain-C in writing of its termination of the
Agreement, which it did on November 26, 2003.

We do not agree with Chain-C that the references to potential closing dates in Seaboard's September 15, 2003 letter were sufficient to obligate it to complete the purchase unless it exercised its section 12(a)(ii) option prior to the closing date. The rightholder's exercise of an option to purchase must be positive, unconditional, and unequivocal. *See Texas State Optical, Inc. v. Wiggins, Inc.*, 882 S.W.2d 8, 10-11 (Tex. App.–Houston [1st Dist.] 1994, no writ). Nothing in that correspondence is sufficient to modify or release the section 12(a)(ii) provision that Seaboard might terminate the contract "at any time" was clear, explicit, and without limitation. To hold otherwise would be to rewrite the contract, which we cannot do.

Chain-C also contends that because the trial court erred in entering summary judgment in favor of Seaboard, it also erred in awarding Seaboard attorney fees. Our holding that the trial court did not err in rendering its judgment obviates the necessity for discussing that issue.

In sum, Chain-C's issue is overruled and the judgment of the trial court is affirmed.


John T. Boyd
Senior Justice

8