NO. 07-07-0025-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



APRIL 15, 2008


______________________________



DONNY KEVIN DAVIS, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 53,837-E; HON. ABE LOPEZ, PRESIDING


_______________________________



Memorandum Opinion After Abatement


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Per our former opinion, we remanded this cause to the trial court with directions that
it convene a hearing upon the motion for new trial filed by Donny Kevin Davis. At that time,
the trial court was to determine whether Davis received ineffective assistance of counsel
because his trial attorney did not request or object to the omission of an accomplice
witness instruction. After concluding that trial counsel's "omission did not constitute
deficient performance" and appellant "was not prejudiced by the omission," the trial court
denied the motion. Finding no error in that decision, we affirm the final judgment.

 Assuming arguendo that the failure to request an accomplice witness instruction
constitutes defective performance, see Henson v. State, 915 S.W.2d 186, 197 (Tex.
App.-Corpus Christi 1996, no pet.) (so holding), the evidence unrelated to the accomplice's
testimony sufficed to connect appellant to the crime charged. So too did it, by itself,
provide sufficient basis upon which a jury could rationally conclude, beyond reasonable
doubt, that appellant committed the burglary. Indeed, we concluded as much in our prior
opinion, see Davis v. State, No. 07-07-0025-CR, 2008 Tex. App. Lexis 53 (Tex. App.-
Amarillo January 4, 2008, no pet. h.), as did the trial court in its findings of fact and
conclusions of law. Given this, we now hold that there was not a reasonable probability
that the outcome would have differed had the omission not occurred; consequently, the
trial court did not err in denying a new trial. See Henson v. State, 915 S.W.2d at 197
(holding that if there is a reasonable possibility that a rational jury would convict the
defendant without the accomplice witness testimony, then trial counsel's omission is not
reversible error); accord Cunningham v. State, No. 06-05-0215-CR, 2006 Tex. App. Lexis
8206 at *6 (Tex. App.-Texarkana, September 19, 2006, pet. ref'd) (concluding similarly). 

 By this opinion, we have resolved all issues pending in this appeal and affirm the
judgment of the trial court.


 Brian Quinn

 Chief Justice



Do not publish. 



STYLE="font-size: 10pt">Issue One - Who Pays the First 2% 

 To determine whether the trial court erred in requiring Chesapeake to pay the first
2% of the tax, we must construe paragraph "Fourth." In doing so, we initially note that no
one contends the order or paragraph was ambiguous. Nor do we find it so. Its provisions
lead only to one reasonable meaning. See J. M. Davidson, Inc. v. Webster, 128 S.W.3d
223, 229 (Tex. 2003) (stating that a contract is ambiguous if its terms can be afforded two
reasonable yet conflicting interpretations). Consequently, our construction of the order
involves a question of law. Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d 24, 26 (Tex.
App.-Amarillo 2000, no pet.) (holding that the construction of an unambiguous contract is
a question of law); Borders v. KRLB, Inc., 727 S.W.2d 357, 359 (Tex. App.-Amarillo 1987,
writ ref'd n.r.e.) (stating similarly). 

 Next, we must strive to give effect to the parties' intent, as garnered from the
language used in the writing when read as a whole. Cross Timbers Oil Co. v. Exxon
Corporation, 22 S.W.3d at 26. Precedent further requires us to afford the words used by
the parties their plain, ordinary, and generally accepted meaning, unless the instrument
requires otherwise. Sun Operating Partnership, Ltd. v. Holt, 984 S.W.2d 277, 285 (Tex.
App.-Amarillo 1998, pet. denied); Phillips Petroleum Co. v. Gillman, 593 S.W.2d 152, 154
(Tex. Civ. App.-Amarillo 1980, writ ref'd n.r.e.). Authority similarly prohibits us from
rewriting the instrument to say something it does not. Borders v. KRLB, Inc., 727 S.W.2d
at 359. Thus, we cannot disregard what the parties intended simply because one comes
to dislike its terms or thinks that something else is needed. HECI Exploration Co. v. Neel,
982 S.W.2d 881, 888-89 (Tex. 1998). In other words, the parties to the instrument have
the freedom to select what terms and provisions to include before executing it. Because
they strike the deal they choose and voluntarily bind themselves in the manner they opt,
we generally cannot interfere with their decision. To do so would be to undermine not only
the sanctity afforded their agreement but also the freedom given them to reach it. With this
said, we turn to the paragraph "Fourth."

 One reading the provision immediately sees that Texoma paid an occupation or
production tax of 2% on the market value of the gas extracted. This liability of Texoma was
"understood" by Sneed. Moreover, nothing was said of Sneed being obligated to pay same
or any part of it. Yet, in the ensuing sentence, the parties to the order considered the
likelihood of an "increase in the amount of said tax" or the levy of a "new occupation,
production, severance or other excise tax." In providing for that likelihood, it was agreed
that "one-eighth (1/8) of such increase shall be deducted from the above agreed royalty
value of the gas which is then applicable." (Emphasis added). Reading the phrase "such
increase" in context, we see that it referred to a rise in the tax or taxes then being levied
upon the gas produced and sold from the lease. And, when that increase came into
existence, one-eighth of it would be paid by Sneed through a deduction from the royalty
due him. So, in effect, what the parties did was agree among themselves that the interest
of the royalty owner, i.e. Sneed then and Denson now, would be reduced for the purpose
of paying any occupation, production, severance or like tax on the gas when the amount
of that tax exceeded two percent of the market value of the gas. And, if the royalty
payment due the royalty owner was not affected by the change until it exceeded two
percent, then, logically, Texoma, and its successors-in-interest (i.e. Chesapeake), were
saddled with the obligation of paying the first two percent. 

 We acknowledge Chesapeake's contention that, at the time the division orders were
signed, only the "producers" were obligated to pay the tax and royalty owners were not
"producers." So too do we acknowledge the contention that the group of entities now
statutorily responsible for assuring payment of the tax includes royalty interest owners. 
Yet, the statutory changes do not relieve us from attempting to enforce the original intent
of the parties to the agreement. This is so because such changes cannot operate
retroactively to deny individuals of previously vested rights. Ex parte Abell, 613 S.W.2d
255, 260 (Tex. 1981). And, by the time the laws changed to impose upon a royalty interest
owner an obligation to pay tax upon the gas, the royalty interest owner here had already
contracted with its lessee to assure that the lessee paid the first two percent of the tax. 
Given this pre-existing contractual arrangement, the subsequent statutory changes to
which Chesapeake alluded had and have no affect upon Sneed's entitlement and
Chesapeake's obligation. (3)

 We further acknowledge Chesapeake's alternate contention. It involved several
components. The first encompassed the proposition that any tax for which Sneed was
statutorily responsible automatically became a new tax. The second encompassed the
proposition that both Texoma and Sneed agreed to pay their pro rata share of all new
taxes. And, from these components, Chesapeake deduced that since the royalty owner
agreed to pay his pro rata share of the new tax, it was not liable to pay the first two percent
of the new tax. To accept this contention, however, would be to ignore aspects of
paragraph "Fourth," and that we cannot do. Authority prohibits us from simply selecting
particular words and phrases of a contract to weigh when others exist which are also of
import. Again, we must read the document as a whole, Cross Timbers Oil Co. v. Exxon
Corporation, 22 S.W.3d at 26, and afford meaning to each word written when at all
possible. See ABS Sherman Properties, Ltd. v. Sarris, 626 S.W.2d 538, 539 (Tex.
App.-Texarkana 1982, writ ref'd n.r.e.) (requiring the court to assign import to all words of
the agreement). Consequently, here, the words and phrases surrounding reference to the
imposition of a "new tax" cannot be ignored. Of particular import are the passages
appearing before and after the allusion to a "new tax" and which contain the word
"increase." The former reads "[i]f hereafter there shall be any increase in the amount of
said tax" while the latter states "one-eighth (1/8) of such increase shall be deducted from
the above agreed royalty value of the gas . . . ." (Emphasis added). And, when those
passages are read along with that mentioning a "new tax," there can only be but one
reasonable interpretation of what the parties intended. They sought not to distinguish
between old and new taxes but rather define what was to be included in the idea of an
"increase" in taxes. And, the "increase" intended by their words was any tax, new or old,
that exceeded the two percent mentioned in the opening sentence of paragraph "Fourth." 

 In sum, paragraph "Fourth" addressed the obligation of paying taxes imposed upon
the gas produced. Through that provision, the parties agreed among themselves that
royalty owners, such as Sneed and now Denson, would 1) share in the obligation once the
tax exceeded two percent and 2) then pay only their fractional share of the excess when
the tax exceeded that threshold. (4) So, because the trial court interpreted the provision in
a way effectuating that agreement, it did not err, and we overrule Chesapeake's first issue.

 Issue Two - Does the Wording of the Judgment Comport with the Division Order?

 In its second issue, Chesapeake asserts that aspects of the judgment should be
modified to comport with the relief sought and won by Denson and the wording of
paragraph "Fourth." We sustain the issue.

 The modifications desired pertained to the trial court's interpretation of the order. 
Furthermore, Denson sought a declaration obligating "all lessors . . . to pay the first two
percent . . . of severance taxes solely from their share of production, and that [her] royalty
interests are to be charged with severance taxes only where those taxes exceed two
percent . . . ." Next, in addressing the prayer, the trial court decreed that

 [p]ursuant to the express terms of Plaintiff's Exhibits 3 and 28, all severance
tax assessments above 2% which are assessed against the proceeds of the
subject mineral production are to be divided between the operator, now the
Chesapeake defendants, and the applicable royalty interest owners in the
ratio of the division of the working interest and royalty interest in question.

(Emphasis added). It is the italicized words with which Chesapeake has concern. 
According to it, the division order did not consist of an agreement between an "operator"
and "all applicable royalty interest owners." Rather, the parties to it were Texoma and
Sneed. Furthermore, the only litigants remaining at the time of trial were Chesapeake and
the trustee for the Denson trust (the latter subsequently becoming Denson herself via
substitution). Thus, the trial court purportedly erred in referring to "the operator" and "all
applicable royalty interest owners" in its judgment. We agree and sustain the issue.

 A trial court lacks jurisdiction to enter judgment for a non-litigant; to do so constitutes
fundamental error on its part if the error is apparent from the face of the record. Supak v.
Zboril, 56 S.W.3d 785, 793 (Tex. App.-Houston [14th Dist.] 2001, no pet.). Given this and
the fact that the record indicates that no other royalty owners were litigants at the time of
trial, the trial court here lacked jurisdiction to adjudicate the potential claims of royalty
owners other than Denson. And, since its judgment can be construed as doing so, we will
modify it.

 Next, we turn to the rule of procedure requiring the judgment to comport with the
pleadings. Tex. R. Civ. P. 301. With this in mind, we note that Denson did not request, in
her live pleadings, that the trial court address the obligations of any "operator" to pay the
first two percent of the severance taxes. Instead, she sought a declaration regarding the
obligation of Chesapeake and all lessees to do so. (5) Moreover, while an operator may be
a lessee, a lessee may not necessarily be an operator. So, placing the obligation to pay
the tax upon the "operator" exceeds the scope of relief requested by Denson. Thus, the
judgment will be modified to correct this.

 Accordingly, the second sentence in paragraph arabic number three of the judgment
is modified to read: "Pursuant to the express terms of Plaintiff's Exhibits 3 and 28, all
severance tax assessments above 2% which are assessed against the proceeds of the
subject mineral production are to be divided between Chesapeake Panhandle Limited
Partnership and Chesapeake Operating, Inc., and their successors-in-interest, and Lillian
B. Denson, and her successors in-interest in the ratio of the division of the working interest
and royalty interest in question." As modified, the judgment is affirmed.

 

 Brian Quinn 

 Chief Justice
1. Actually, judgment was entered in favor of Frost National Bank, as trustee for the Lillian B. Denson
Trust. However, after the trial court entered judgment, Denson was allowed to substitute for Frost National
Bank, as trustee.
2. No one questions that the provision became part of the underlying mineral lease. This occurred per
the proviso in the division orders stating that to the extent the order "cover[ed] matters not included in the
above mentioned leasehold, and insofar as it cover[ed] matter not dealt with therein, [it] constitute[d] an
amendment of said lease." 
3. Nor did Chesapeake provide either argument or authority indicating that the statutory changes legally
precluded us from enforcing the original terms of the division order. This dearth of argument and authority
affords us little basis upon which to relieve Chesapeake of its contractual obligation. 
4. Again, that agreement is now part of the underlying mineral lease. 
5. In her pleading, Denson actually alludes to "all lessors." But, we view this as a typographical error. 
Given the context of the allegation, she obviously meant "all lessees."